**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
EASTERN DIVISION**

| | |
|---|---|
| Turtle Mountain Band of Chippewa Indians, Spirit Lake Tribe, Wesley Davis, Zachery S. King, and Collette Brown<br><br>Plaintiffs,<br><br>vs.<br><br>Alvin Jaeger, in his official capacity as Secretary of State of North Dakota,<br><br>Defendant. | Case No. 3:22-cv-00022<br><br><br>**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS** |

## INTRODUCTION

Defendant Alvin Jaeger, in his official capacity as Secretary of State of North Dakota ("Defendant Jaeger") submits this memorandum in support of his Motion to Dismiss. Defendant Jaeger requests the Court dismiss Plaintiffs' *Complaint* (Doc. 1) in its entirety. The sole claim made by Plaintiffs in this lawsuit is the legislative districts created by the Legislative Assembly following the 2020 Census, specifically Districts 9 and 15, allegedly violate Section 2 of the Voting Rights Act. *See* Doc. 1, ¶¶ 124-31. However, the Voting Rights Act does not contain a private right of action for violation of Section 2, and therefore Plaintiffs have failed to state a claim and this Court lacks subject matter jurisdiction. Additionally, the Turtle Mountain Band of Chippewa Indians ("Turtle Mountain") and Spirit Lake Tribe ("Spirit Lake") are not "citizen[s] of the United States" under the Voting Rights Act, and the Tribes lack standing in any event.

## FACTS AND BACKGROUND

### I.     Plaintiffs' Claims

1

Plaintiffs allege, following the passage of House Bill No. 1504 ("H.B. 1504")[1] by the North Dakota Legislative Assembly in a special session, and signed by the Governor on November 11, 2021, "Native American voters in northeastern North Dakota are 'cracked' in District 9B and District 15 where they constitute a minority of the voting age population.  The remaining Native American population is packed into District 9A, where Native Americans constitute a supermajority of the voting age population." Doc. 1, ¶ 126.  Plaintiffs claim this results in dilution of the votes of the individual Plaintiffs, Wesley Davis ("Davis"), Zachery S. King ("King"), and Collette Brown ("Brown"), and of other members of Turtle Mountain and Spirit Lake, allegedly in violation of Section 2 of the Voting Rights Act.  *Id.* at ¶ 131.  Plaintiffs' Complaint contains a single count, and it is based solely on Section 2 of the Voting Rights Act.  *Id.* at ¶¶ 124-31.  In their prayer for relief, Plaintiffs seek a declaration that H.B. 1504 violates Section 2 of the Voting Rights Act, an injunction preventing Defendant Jaeger from administering, enforcing, preparing for, or permitting the nomination or election of members of the Legislative Assembly from the challenged districts, an order for the Legislative Assembly to enact a new redistricting plan by a reasonable deadline, or an order establishing a new redistricting plan if the Legislative Assembly fails to meet the deadline.  Doc. 1, p. 31.

## II.    The Parties

### a.  Defendant Jaeger

Defendant Jaeger is sued in his official capacity as Secretary of State of North Dakota. The North Dakota Secretary of State is the State's supervisor of elections and is responsible for "supervis[ing] the conduct of elections," and "publish[ing] . . . a map of all legislative districts."

---

[1] A copy of H.B. 1504 is attached as Exhibit 1 to the Affidavit of David R. Phillips ("Phillips Aff."), filed herewith.

N.D. Cent. Code §§ 16.1-01-01(1); 16.1-01-01(2)(c).  He is tasked with "maintain[ing] the central voter file," which "must contain . . . the legislative district . . . in which the [voter] resides." N.D. Cent. Code §§ 16.1-02-01; 16.1-02-12(6).  As the supervisor of elections, the North Dakota Secretary of State has broad duties to administer Chapter 16.1 of the North Dakota Century Code relating to elections.  *See* N.D. Cent. Code § 16.1-01-01.

### b. Plaintiffs

#### i. Turtle Mountain

Plaintiffs allege in their Complaint that Turtle Mountain is a federally recognized Tribe with enrollment of more than 30,000 members. Doc. 1, ¶ 19 (citing 86 Fed. Reg. 7557).  The Turtle Mountain Tribal Headquarters is located on the Turtle Mountain Indian Reservation in Rollette County, North Dakota.  *Id.* at ¶¶ 20-21.  Plaintiffs allege Turtle Mountain members live on and near the Turtle Mountain Indian Reservation, and allege the Reservation has a total population of 5,113 according to the 2020 Census.  *Id.* at ¶ 21.  Plaintiffs allege "HB 1504 places the Turtle Mountain Indian Reservation into Senate District 9 and House District 9A. Lands held in trust for the Turtle Mountain Band of Chippewa Indians are located in House District 9B."  *Id.* at ¶ 22.

#### ii. Spirit Lake

According to the Complaint, Spirit Lake is a federally recognized Tribe with enrollment of 7,559 members.  Doc. 1, ¶ 14 (citing 86 Fed. Reg. 7557).  The Spirit Lake Headquarters is located on the Spirit Lake Reservation with portions of the Reservation in Benson, Eddy, Nelson, Wells, and Ramsey Counties, North Dakota.  *Id.* at ¶¶ 15-16.  Plaintiffs allege approximately 3,459 Spirit Lake members live on the Spirit Lake Reservation, with more living in surrounding areas.  *Id.* at ¶ 17.  Plaintiffs also allege "HB 1504 places the Spirit Lake Reservation into Legislative District 15,

which is comprised of one single-member state senate district and a two-member at-large state house districts." *Id.* at ¶ 18.

### iii.  Individual Plaintiffs

Plaintiffs also include individual Native American voters, who claim to reside in the challenged districts.  Plaintiffs Davis and King allege they are Native Americans, citizens of Turtle Mountain, reside on the Turtle Mountain Indian Reservation within State Senate District 9 and House District 9A, are regular voters and intend to vote in 2022 and future elections.  Doc. 1, ¶¶ 26-27.  Plaintiff Brown alleges she is Native American, a citizen of Spirit Lake, resides on the Spirit Lake Reservation within Legislative District 15, is a regular voter and intends to vote in 2022 and future elections.  *Id.* at ¶ 28.

## LAW AND ARGUMENT

**I.     The Claims Of All Plaintiffs Should Be Dismissed Because The Voting Rights Act Does Not Contain A Private Right Of Action For Violation of Section 2**

The sole claim made by Plaintiffs in this lawsuit is that legislative District 9 (including Subdistricts 9A and 9B) and legislative District 15 violate Section 2 of the Voting Rights Act.  *See* Doc. 1, ¶¶ 124-31.  Section 2(a) of the Voting Rights Act provides, "[n]o voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgment of the right of any citizen of the United States to vote on account of race or color. . . ."  52 U.S.C. § 10301(a).  Section 2(b) provides clarification, stating:

> A violation . . . is established if, based on the totality of circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a [protected] class of citizens . . . in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice.

52 U.S.C. § 10301(b).  The Voting Rights Act does not contain any express right for private parties, such as the Plaintiffs in this case, to bring an action to enforce Section 2.

In *Brnovich v. Democratic Nat'l Comm.*, United States Supreme Court Justice Gorsuch (joined by Justice Thomas) wrote separately to "flag" an issue "not decide[d]" by the Court, namely whether the Voting Rights Act includes a private right of action to enforce Section 2.  141 S. Ct. 2321, 2350 (2021).  In that regard, Justice Gorsuch explained, "[o]ur cases have assumed—without deciding—that the Voting Rights Act of 1965 furnishes an implied cause of action under § 2.  Lower courts have treated this issue as an open question."  *Id.* (Gorsuch, J., concurring).

In a recent Order issued by the United States District Court for the Eastern District of Arkansas (also in the Eighth Circuit), the court addressed this "flagged" issue directly and found that Section 2 of the Voting Rights Act does not contain a private right of action, thereby depriving the court of subject matter jurisdiction in that case.  *Arkansas State Conference NAACP, et. al. v. The Arkansas Board of Apportionment, et. al.*, Case 4:21-cv-01239, Doc. 100[2].  In the Arkansas case, the district court dismissed the private plaintiffs' Section 2 claims and allowed five calendar days for the Attorney General of the United States to decide whether to join this case as a plaintiff, which was required for the litigation to continue.  *Id.*  Defendant Jaeger requests this Court adopt the legal reasoning and findings in the Arkansas Order (Case 4:21-cv-01239, Doc. 100), find that Section 2 of the Voting Rights Act does not contain a private right of action, and dismiss the Plaintiffs' claims in their entirety.  Section 2 does not contain an express private right of action, and this Court should not judicially imply such a right.

---

[2] For the Court's convenience, a copy of the cited Order in *Arkansas State Conference NAACP, et. al. v. The Arkansas Board of Apportionment, et. al.*, Case 4:21-cv-01239, is attached as Exhibit 2 to the Phillips Aff.

As noted by the Arkansas court, a judicially implied private right of action is now extremely disfavored by the United States Supreme Court. *Id.* at p. 17 (citing *Alexander v. Sandoval*, 532 U.S. 275 (2001); *Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002); *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148 (2008); *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017)).  While the cited line of Supreme Court cases does allow in some situations for a private right of action to enforce a federal statute, it requires that Congress used rights-creating language in the statutory provision at issue and requires that Congress provide for a private remedy.  *Id.*  Neither of those conditions is met with respect to Section 2 of the Voting Rights Act.  On its face, the Voting Rights Act contains no express private right of action and contains no private remedy with respect to Section 2.

The Arkansas court analyzed the text and structure of the Voting Rights Act to discern whether Congress intended to create a private remedy.  Case 4:21-cv-01239, Doc. 100, pp. 18-24. As the Arkansas court noted, Section 2 itself is silent as to the remedies available for a violation of that section, however, another section (Section 12 [52 U.S.C. § 10308]) does provide remedies for violations of Section 2.  *Id.* at p. 19.  The remedies provided under Section 12 for violation of Section 2 are all of the type that would be brought by the Attorney General of the United States. *Id.*  For example, subsection (a) and (c) of Section 12 provide that violations of Section 2, among other sections, subjects violators to a fine up to $5,000 and/or imprisonment for up to five years. *Id.* at pp. 19-20 (citing 52 U.S.C. § 10308(a) and (c)).  Subsection (d) of Section 12 expressly grants to the Attorney General of the United States the power to seek preliminary or permanent injunctions when "any person has engaged or there are reasonable grounds to believe that any person is about to engage in any act or practice prohibited by [Section 2 or other listed sections in the Voting Rights Act]".  Case 4:21-cv-01239, Doc. 100, p. 20 (citing 52 U.S.C. § 10308(d)).

There is no mention of private parties, which "strongly implies their exclusion." *Id.* The Arkansas court went on to explain how none of the other subsections of Section 12, or any other portion of the Voting Rights Act contain or imply a private right of action. *Id.* at p. 20-24 (discussing Sections 3, 12, and 14).

The Arkansas court also points out that the reasoning in earlier cases at the United States Supreme Court and the Eighth Circuit Court of Appeals suggesting there may be a private right of action under Section 2 of the Voting Rights Act is merely dicta or has been abandoned by the Supreme Court in favor of the stricter reasoning in *Sandoval* and its progeny, cited above. *Id.* at pp. 24-30. The Arkansas court points out a potentially binding precedent from the Eighth Circuit, *Roberts v. Wamser*, 883 F.2d 617 (8th Cir. 1989), however, it explains the holding in that case was simply that a losing candidate cannot bring suit to enforce Section 2 of the Voting Rights Act. Case 4:21-cv-01239, Doc. 100, pp. 28-30. The broader discussion of Section 2 in that case was merely dicta. *Id.*

The claims of all Plaintiffs should be dismissed in their entirety because there is no private right of action in Section 2 of the Voting Rights Act. However, even if the Court finds there is a private right of action in Section 2 of the Voting Rights Act, Turtle Mountain and Spirit Lake should still be dismissed from this lawsuit as they are not "citizens of the United States" under the Voting Rights Act. Additionally, Turtle Mountain and Spirit Lake lack standing.

## II.     Turtle Mountain And Spirit Lake Should Be Dismissed Because The Tribes Are Not "Citizen[s] Of The United States" And Thus Not Protected By Section 2 Of The Voting Rights Act

Turtle Mountain and Spirit Lake are not "citizen[s] of the United States", and thus are not entitled to bring the claims asserted in this case. Section 2 of the Voting Rights Act prohibits states and political subdivisions from imposing or applying qualifications or prerequisites to voting, or

standards, practices, or procedures which result in "a denial or abridgement of the right of <u>any</u> <u>citizen of the United States</u> to vote on account of race or color, or in contravention of the guarantees set forth in" certain other portions of the Voting Rights Act. 52 U.S.C. § 10301(a) (emphasis added).

Under the Fourteenth Amendment to the United States Constitution, "[a]ll persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside." U.S. Const. amend. XIV, § 1. Indian Tribes are neither born nor naturalized in the United States. Congress explicitly granted citizenship to individual Indians in 8 U.S.C.A. § 1401(b), which states, "a person born in the United States to a member of an Indian… tribe" "shall be [a] national[] and citizen[] of the United States at birth", but there is no such naturalization of tribes themselves. *Id.* Similarly, it is well established that "[a]n Indian tribe is not a citizen of any state…." *Auto-Owners Ins. Co. v. Tribal Court of Spirit Lake Indian Reservation*, 495 F.3d 1017, 1020 (8th Cir. 2007) (citing *Turtle Mountain Sioux Indian Tribe v. Dorgan*, 505 F.2d 1135, 1140 (8th Cir. 1974); *Gaming World Int'l v. White Earth Band of Chippewa Indians*, 317 F.3d 840, 847 (8th Cir. 2003)).

Indian Tribes such as Turtle Mountain and Spirit Lake are not "citizen[s] of the United States" and thus have no rights under Section 2 of the Voting Rights Act by which to bring their claims.  As such, Turtle Mountain and Spirit Lake have failed to state a claim and their allegations in the Complaint should be dismissed.

### III.    Turtle Mountain And Spirit Lake Should Be Dismissed Because The Tribes Lack Standing

Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy. "The doctrine developed in our case law to ensure that federal courts do not exceed their authority as it has been traditionally understood. The doctrine limits the category of litigants empowered to

maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (internal citation omitted). "To demonstrate Article III standing, a plaintiff 'must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Heglund v. Aitkin Cty.*, 871 F.3d 572, 577 (8th Cir. 2017) (quoting *Spokeo*, 136 S. Ct. at 1547). The injury-in-fact element requires an injury both particularized and concrete, and actual or imminent rather than conjectural or hypothetical. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560 n.1). Under the second element, "there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court.'" *Lujan*, 504 U.S. at 560-61 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976)). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561. "Where, as here, a case is at the pleading stage, the plaintiff must clearly allege facts demonstrating each element." *Spokeo*, 136 S. Ct. at 1547 (internal quotation marks and citation omitted). Standing is determined as of the time a suit is commenced. *Park v. Forest Serv. of United States*, 205 F.3d 1034, 1038 (8th Cir. 2000).

Turtle Mountain and Spirit Lake have not asserted any claims in the Complaint on their own behalf. *See* generally Doc. 1. They do not allege any specific injury to themselves as federally recognized Tribes. *See id.* Instead, they only make allegations on behalf of their individual members. *See e.g.*, Doc. 1, ¶ 131. However, Turtle Mountain and Spirit Lake do not have standing to raise claims on behalf of their allegedly impacted members in this case.

Defendant Jaeger suspects Turtle Mountain and Spirit Lake may argue they can assert claims on behalf of the members of their tribes under the doctrine of parens patriae. "Parens patriae is a doctrine whereby a sovereign, usually a state or federal government, may in appropriate circumstances sue as 'parent of the country' to vindicate interests of their citizens." *Navajo Nation v. Superior Court of State of Wash. for Yakima Cty.*, 47 F. Supp. 2d 1233, 1240 (E.D. Wash. 1999), aff'd sub nom. *Navajo Nation v. Confederated Tribes & Bands of the Yakama Indian Nation*, 331 F.3d 1041 (9th Cir. 2003). "The Eighth Circuit has considered, but not yet recognized the doctrine of parens patriae in the context of tribes suing on behalf of tribal members." *Rosebud Sioux Tribe v. United States*, No. 3:16-CV-03038-RAL, 2017 WL 1214418, at *4 (D.S.D. Mar. 31, 2017) (citing *United States v. Santee Sioux Tribe of Neb.*, 254 F.3d 728, 734 (8th Cir. 2001); *Delorme v. United States*, 354 F.3d 810, 816 (8th Cir. 2004)).

Standing for purposes of Article III can be established if there is a showing that parens patriae standing requirements are satisfied: "the requirements of Article III will be satisfied if the Tribe demonstrates that it has parens patriae standing to bring claims . . . ." *Quapaw Tribe of Oklahoma v. Blue Tee Corp.*, 653 F. Supp. 2d 1166, 1178 (N.D. Okla. 2009). S*ee Massachusetts v. EPA*, 549 U.S. 497, 498 (2007) (distinguishing requirement for a state to have standing to sue from the *Lujan* test); *Glanton ex rel. ALCOA Prescription Drug Plan v. AdvancePCS Inc.*, 465 F.3d 1123, 1126 (9th Cir. 2006) (noting that governmental entities have standing under Article III if they can demonstrate parens patriae standing); *Massachusetts v. Bull HN Info. Sys., Inc.*, 16 F. Supp. 2d 90, 103 (D. Mass. 1998) ("Because the Commonwealth has parens patriae standing to pursue this action, Article III no longer poses an obstacle.").

Standing under parens patriae has two requirements that are not met in this case: 1) the claims of the sovereign must be made on behalf of all of its citizens, not merely a select group of

citizens; and 2) the sovereign must assert its own quasi-sovereign interest, not only the interests of private parties. *Santee Sioux Tribe of Nebraska*, 254 F.3d at 734; *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 607 (1982). While failure to meet either one of these requirements is fatal to parens patriae standing, Turtle Mountain and Spirit Lake fail to meet both requirements in this case. *See id.*

   a.   **The Tribes Are Not Representing All Or A Substantial Segment Of Tribal Members In This Action**

   Turtle Mountain and Spirit Lake fail to establish parens patriae standing because they are not representing the interests of all of their members, rather only a select group. In *Santee Sioux Tribe*, the Eighth Circuit Court of Appeals rejected a tribe's argument that it had standing to sue on behalf of its tribal members under the doctrine of parens patriae because the "doctrine is reserved for actions which are asserted on behalf of all of the sovereign's citizens." 254 F.3d at 734 (citing *United States v. Hooker Chemicals & Plastics Corp.*, 749 F.2d 968, 984–85 (2d Cir. 1984)) (emphasis in original). The Eighth Circuit stated, "The parens patriae doctrine cannot be used to confer standing on the Tribe to assert the rights of a dozen or so members of the Tribe." *Id.* (citing *Navajo Nation*, 47 F. Supp. 2d at 1240 (Tribe lacked standing under the doctrine of parens patriae to assert rights of biological grandparents in action challenging adoption of grandchild because claims were personal to grandparents and not those of tribe as a whole, stating "[t]he governmental entity must raise claims which affect all its members, not just a select few.") (emphasis added); *Kickapoo Traditional Tribe of Texas v. Chacon*, 46 F. Supp. 2d 644, 652 (W.D. Tex.1999) (Tribe did not have standing to assert a first amendment violation because the rights sought to be asserted were primarily those of a small group of tribe members and not those of the tribe as a whole)). Other federal courts that have considered the issue have likewise held that tribes have no standing under the doctrine of parens patriae if the claims are brought on behalf of only

11

some but not all members of the tribe. *See Kickapoo Tribe of Oklahoma v. Lujan*, 728 F. Supp. 791, 795 (D.D.C. 1990) (Sovereign tribe could not sue under the doctrine of parens patriae because it was not acting on behalf of all of its members although all of its members may be affected in some way by reorganization); *Assiniboine & Sioux Tribes v. Montana*, 568 F. Supp. 269, 277 (D. Mont. 1983) (Tribe did not have standing to sue under parens patriae doctrine because it was not acting on behalf of the collective interests of all its citizens: "Here, the proposed claim is on behalf only of those Indians seeking refunds because they have been improperly subjected to these taxes, and those Indians who might, but for this lawsuit, continue to be wrongfully subjected to them."); *Alabama & Coushatta Tribes of Texas v. Trustees of Big Sandy Indep. Sch. Dist.*, 817 F. Supp. 1319, 1327 (E.D. Tex. 1993) (In a case challenging a hair length restriction in a school dress code, the court stated, "[w]hile the application of the hair restriction may in some way affect members of the Tribe other than the Native American students at Big Sandy and their families, the Tribe is not representing the interests of all its members in this case, as the doctrine of parens patriae requires.").

Turtle Mountain alleges in the Complaint it has enrollment of more than 30,000 members, while only 5,113 people (presumably including both members and non-members) live on the Turtle Mountain Indian Reservation. Doc. 1, ¶¶ 19, 21.  Spirit Lake alleges in the Complaint it has enrollment of 7,559 members, while only 3,459 Spirit Lake members live on the Spirit Lake Reservation. *Id.* at ¶¶ 14, 17.  Defendant Jaeger asserts that not all, or even a substantial segment, of the members of the two Turtle Mountain or Spirit Lake are impacted by the challenged districts, and thus the Tribes cannot establish parens patriae standing.   Turtle Mountain and Spirit Lake make no allegations on behalf of the many thousands of tribal members not living on or near one

of their respective reservations.  Turtle Mountain and Spirit Lake thus have no standing under the doctrine of parens patriae.

### b.  The Tribes Are Not Asserting A Quasi-Sovereign Interest

Parens patriae standing also requires that a quasi-sovereign interest is asserted. *Alfred L. Snapp & Son, Inc.*, 458 U.S. at 607. The interest asserted must be "apart from the interests of particular private parties . . . [the party] must be more than a nominal party." *Id.* Quasi-sovereign interests "are not sovereign interests, proprietary interests, or private interests pursued by the State [or Tribe] as a nominal party." *Id.* at 602. "First, a State [or Tribe] has a quasi-sovereign interest in the health and well-being-both physical and economic-of its residents in general. Second, a State has a quasi-sovereign interest in not being discriminatorily denied its rightful status within the federal system." *Id.* at 607. Turtle Mountain and Spirit Lake fail to assert a quasi-sovereign interest as required under *Alfred L. Snapp & Son, Inc.* and, therefore, they fail the requirements for parens patriae standing. The only rights asserted in the Complaint belong to "citizen[s] of the United States" and are granted by Section 2 of the Voting Rights Act.  The Complaint is devoid of any allegations establishing a quasi-sovereign interest in the Tribes themselves.

Based on the foregoing, Turtle Mountain and Spirit Lake do not satisfy the requirements for parens patriae standing and have not asserted any claims for alleged injuries to themselves. Accordingly, they should be dismissed from this case.

### CONCLUSION

For the foregoing reasons, Defendant Jaeger respectfully requests the Court dismiss Plaintiffs' *Complaint* (Doc. 1) in its entirety.

Dated this 15th day of April, 2022.

By: *  /s/ David R. Phillips  *

David R. Phillips
Special Assistant Attorney General
ND Bar # 06116
300 West Century Avenue
P.O. Box 4247
Bismarck, ND 58502-4247
(701) 751-8188
dphillips@bgwattorneys.com

Attorney for Defendant Alvin Jaeger, in his official capacity as Secretary of State of North Dakota

Dated this 15th day of April, 2022.

By: _/s/ Matthew A. Sagsveen_

Matthew A. Sagsveen
North Dakota Solicitor General
ND Bar # 05613
Office of Attorney General
500 N. 9th Street
Bismarck, ND 58501-4509
masagsve@nd.gov

Attorney for Defendant Alvin Jaeger, in his official capacity as Secretary of State of North Dakota

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing **MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS** was on the 15th day of April, 2022, filed electronically with the Clerk of Court through ECF:

Mark P. Gaber
DC Bar No. 98807
Campaign Legal Center
1101 14th St. NW, Ste. 400
Washington, DC 20005
mgaber@campaignlegal.org

Molly E. Danahy
DC Bar No. 1643411
Campaign Legal Center
1101 14th St. NW, Ste. 400
Washington, DC 20005
mdanahy@campaignlegal.org

Michael S. Carter
OK No. 31961
Native American Rights Fund
1506 Broadway
Boulder, CO 80301
carter@narf.org

Timothy Q. Purdon
ND No. 05392
ROBINS KAPLAN LLP
1207 West Divide Avenue, Suite 200
Bismarck, ND 58501
TPurdon@RobinsKaplan.com

Bryan L. Sells
P.O. BOX 5493
Atlanta, GA 31107-0493
bryan@bryansellslaw.com

By:＿＿＿*/s/ David R. Phillips*＿＿＿＿＿＿＿
        DAVID R. PHILLIPS