IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
EASTERN DIVISION

| | |
|---|---|
| TURTLE MOUNTAIN BAND OF CHIPPEWA INDIANS, SPIRIT LAKE TRIBE, WESLEY DAVIS, ZACHERY S. KING, and COLLETTE BROWN,<br><br>                Plaintiffs,<br><br>      v.<br><br>ALVIN JAEGER, in his official capacity as Secretary of State of North Dakota,<br><br>              Defendant. | Civil Action No. 3:22-cv-00022-PDW-ARS |

## STATEMENT OF INTEREST OF THE UNITED STATES

The United States files this statement of interest pursuant to 28 U.S.C. § 517, which authorizes the Attorney General to attend to the interests of the United States in any pending lawsuit, and pursuant to Civil Rule 7.1(G), Local Rules (D.N.D.).

The pending motion to dismiss presents the important question of whether private plaintiffs can bring suit to enforce Section 2 of the Voting Rights Act ("VRA"), 52 U.S.C. § 10301. Congress has vested the Attorney General with authority to enforce Section 2 on behalf of the United States. *See* 52 U.S.C. § 10308(d). Given the importance of this issue to the effective enforcement of the VRA, the United States has a substantial interest in ensuring the proper interpretation of Section 2, and the proper resolution of the pending motion to dismiss.

The United States submits this statement of interest to explain its view that private parties can enforce Section 2 of the VRA.[1]

## I.      BACKGROUND

### A.      Procedural Background

Following the 2020 decennial census, the North Dakota Legislative Council Redistricting Committee (the "Redistricting Committee") developed a legislative redistricting plan that was approved by the North Dakota legislature and signed into law on November 11, 2021.  The Turtle Mountain Band of Chippewa Indians, the Spirit Lake Tribe, and three individuals filed suit, alleging that the adopted plan has a discriminatory result in violation of Section 2 of the VRA, because it dilutes the voting power of Native American voters.  Compl. ¶¶ 1-9, 41-42, 127, ECF 1.  Plaintiffs also requested that this Court preliminarily enjoin use of the map.  *Id.* at 31 (Requested Relief, ¶ B).  In lieu of an Answer, Defendant, Secretary of State Alvin Jaeger, filed a motion to dismiss arguing, among other things, that the VRA does not contain a private right of action for violation of Section 2, and thus Plaintiffs have failed to state a claim and this Court lacks subject matter jurisdiction.  Def.'s Br. at 1, 4-7, ECF 18.

### B.      Statutory Background

Section 2 of the VRA imposes a "permanent, nationwide ban on racial discrimination in voting."  *Shelby Cnty. v. Holder*, 570 U.S. 529, 557 (2013).  Section 2(a) prohibits any state or

---

[1] The United States has articulated across decades the view that private parties can enforce the VRA, including in the Supreme Court and most recently in the Eighth Circuit.  *See* U.S. Amicus Br. at 25-27 & n.15, *Morse* v. *Republican Party of Va.*, 517 U.S. 186 (1996) (No. 94-203); U.S. Amicus Br. at 8 n.7, *Allen* v. *State Bd. of Elections*, 393 U.S. 544 (1969) (Nos. 3, 25, 26, and 36); U.S. Amicus Br., *Arkansas State Conference NAACP v. Arkansas Board of Apportionment*, No. 22-1395 (8th Cir.) (filed April 22, 2022), available at https://www.justice.gov/crt/case-document/arkansas-state-conference-naacp-v-arkansas-board-apportionment-brief-amicus.

The United States takes no position on any other issue in this case.

political subdivision from imposing or applying a "voting qualification," a "prerequisite to voting," or a voting "standard, practice, or procedure" that "results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color" or membership in a language minority group.  52 U.S.C. § 10301(a); *see also* 52 U.S.C. § 10303(f)(2).  Like the Fourteenth and Fifteenth Amendments, Section 2 prohibits voting laws and practices adopted with a discriminatory purpose.  *See Chisom v. Roemer*, 501 U.S. 380, 392, 394 n.21 (1991); *see also, e.g.*, *Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2330 (2021).  But in contrast to those amendments, a violation of Section 2 can also "be established by proof of discriminatory results alone."  *Chisom*, 501 U.S. at 404.

Of particular relevance to this case, the Supreme Court has held that Section 2 prohibits vote dilution through the use of redistricting plans that "minimize or cancel out the voting strength of racial [minorities in] the voting population."  *Thornburg v. Gingles*, 478 U.S. 30, 47 (1986) (internal citations and quotation marks omitted).  *See also Jeffers v. Clinton*, 730 F. Supp. 196, 198, 203-04 (E.D. Ark. 1989) (three-judge court) (holding that Arkansas's 1981 legislative apportionment violated Section 2(b)'s "'results' test"), *aff'd*, 498 U.S. 1019 (1991) (per curiam).

## II.    ARGUMENT

Defendant's motion to dismiss here relies upon the recent decision of a federal district court in Arkansas that dismissed the plaintiffs' challenge to that state's redistricting plan on the proposition that private plaintiffs cannot enforce Section 2 of the VRA.  *Arkansas State Conf. NAACP v. Arkansas Bd. of Apportionment*, 2022 WL 496908 (E.D. Ark. Feb. 17, 2022) ("*Arkansas*"); Def.'s Br. 5-7, ECF 18.  The *Arkansas* decision is a legally erroneous outlier.  This Court should deny Defendant's motion to dismiss.

Supreme Court and Eighth Circuit precedent—most notably, *Morse* v. *Republican Party of Virginia*, 517 U.S. 186 (1996), *Allen* v. *State Board of Elections*, 393 U.S. 544 (1969), and

*Roberts* v. *Wamser*, 883 F.2d 617 (8th Cir. 1989)—establish the existence of a private right of action to enforce Section 2. Those decisions are binding on this Court and have been ratified by Congress.

The framework set forth in *Alexander v. Sandoval*, 532 U.S. 275 (2001) reinforces the conclusion that Section 2 is enforceable through an implied private right of action. Section 2 indisputably contains rights-creating language, and Congress's intent to provide a private remedy to enforce the statute can be inferred from the personal nature of the rights that the VRA protects and from several other VRA provisions that evince Congress's understanding that Section 2 is privately enforceable.

But even if Congress had not contemplated a Section 2-specific implied right of action—and it did—the statute would nevertheless be enforceable through 42 U.S.C. § 1983 to redress violations of the statute committed by persons acting under color of state law. *See Gonzaga Univ.* v. *Doe*, 536 U.S. 273, 284 (2002); Compl. 1, ¶ 10, ECF 1.

## A. Supreme Court And Eighth Circuit Precedents That Congress Has Ratified Establish The Existence Of A Private Right Of Action To Enforce Section 2

The Supreme Court's decisions in *Morse* and *Allen*, as well as the Eighth Circuit's decision in *Roberts*, make clear that a private right of action exists to enforce Section 2. Congress ratified those decisions, and numerous others involving Section 2 claims brought by private plaintiffs, when it repeatedly amended the VRA without disclaiming the already recognized private right of action and when it added provisions that rest on its understanding that one exists.

### 1. Supreme Court Precedent

The Supreme Court recognized more than 25 years ago that, although Section 2 "provides no right to sue on its face, 'the existence of the private right of action under Section 2 . . . has

4

been clearly intended by Congress since 1965.'" *Morse*, 517 U.S. at 232 (opinion of Stevens, J., joined by Ginsburg, J.) (alteration in original) (quoting S. Rep. No. 417, 97th Cong., 2d Sess. 30 (1982) ("1982 Senate Report")); *accord id.* at 240 (opinion of Breyer, J., concurring in the judgment, joined by O'Connor & Souter, JJ.).  Twice the Court confronted the question whether the VRA contains implied rights of action, and both times the Court answered that question in the affirmative.   In *Allen*, the Court found a private right of action to enforce Section 5 of the VRA, 52 U.S.C. § 10304(a), which required jurisdictions covered by Section 4(b) of the Act to obtain preclearance from the Attorney General or the United States District Court for the District of Columbia before subjecting any "person" to a new voting qualification or procedure.  *Allen*, 393 U.S. at 556-557.  Decades later, in *Morse*, the Court found an implied private right of action to enforce Section 10 of the VRA.  *See* 517 U.S. at 232-234.  Section 10 prohibits jurisdictions from conditioning the right to vote on payment of a poll tax, because such a tax can deny or abridge "the constitutional right of citizens to vote."  52 U.S.C. § 10306(a).  The Court recognized the rights of action to enforce Sections 5 and 10 because "[t]he achievement of the [VRA's] laudable goal" to "make the guarantees of the Fifteenth Amendment finally a reality for all citizens  *  *  *  could be severely hampered  *  *  *  if each citizen were required to depend solely on litigation instituted at the discretion of the Attorney General."  *Allen*, 393 U.S. at 556; *see also Morse*, 517 U.S. at 231; H.R. Rep. No. 397, 91st Cong., 1st Sess. 4, 8 (1969).

 *Morse*'s conclusion that private plaintiffs can enforce Section 10 flows directly from its recognition that Congress intended the same for Section 2.  The *Morse* Court held that private plaintiffs must be able to enforce Section 10 because "[i]t would be anomalous, to say the least, to hold that both § 2 and § 5 are enforceable by private action but § 10 is not, when all lack the same express authorizing language."  517 U.S. at 232; *accord id.* at 240 (Breyer, J., concurring)

(stating that *Allen's* rationale "applies with similar force not only to § 2 but also to § 10").  The private plaintiffs' ability to enforce Section 2 was the linchpin to *Morse's* holding.[2]

The *Arkansas* district court erroneously demoted *Morse* by emphasizing that the case "had no majority opinion."  *Arkansas*, 2022 WL 496908, at *15.  True, but irrelevant:  Five Justices in *Morse* explicitly stated that a private right of action exists to enforce Sections 2 and 5 of the VRA, and that private plaintiffs likewise should be able to enforce Section 10 of the VRA. 517 U.S. at 232 (Stevens, J., joined by Ginsburg, J.); *accord id.* at 240 (Breyer, J., concurring in the judgment, joined by O'Connor & Souter, JJ.).  Under *Marks* v. *United States*, 430 U.S. 188, 193 (1977), that conclusion constitutes a holding of the Court.

The *Arkansas* district court wrongly dismissed *Allen* as "relegated to the dustbin of history" and the conclusion by five Justices in *Morse* that *Allen's* rationale applies with equal force to Section 2 as "purely dicta."  *Arkansas*, 2022 WL 496908, at *15 & *16 n.113.  Such disregard for Supreme Court case law contradicts the Eighth Circuit's directive that "federal courts are bound by the Supreme Court's considered dicta almost as firmly as by the Court's outright holdings," particularly when, as here, the earlier pronouncements are "not enfeebled by any [later] statement."  *In re Pre-Filled Propane Tank Antitrust Litig.*, 860 F.3d 1059, 1064 (8th Cir. 2017) (en banc) (citation and internal quotation marks omitted; brackets in original), *cert. denied*, 138 S. Ct. 647 (2018).  To be sure, as Defendant here notes, the *Arkansas* district court relied on Justice Gorsuch's recent concurrence in *Brnovich* v. *Democratic National Committee*,

---

[2] Justice Thomas also acknowledged in his dissenting opinion in *Morse*, which Chief Justice Rehnquist and Justices Scalia and O'Connor joined, that a private right of action can be implied to enforce Section 5, "as well as any rights of action [the Court] might recognize in the future."  *Morse*, 517 U.S. at 289 (Thomas, J., dissenting).  He dissented not because a private right of action cannot as a general matter be inferred from the VRA's text, but because he did not read Section 10 to contain the rights-creating language that Section 2 indisputably possesses. *See* p. 11, *infra*.

141 S. Ct. 2321 (2021), which characterized whether Section 2 is privately enforceable as "an open question." *Id.* at 2350 (Gorsuch, J., concurring); *see Arkansas*, 2022 WL 496908, at *18; Def.'s Br. 5, ECF 18. But Justice Gorsuch cited in support of that proposition only a Fourth Circuit opinion that predated *Morse* and "[a]ssum[ed] without deciding" that Section 2 is privately enforceable. *Washington* v. *Finlay*, 664 F.2d 913, 926 (4th Cir. 1981), *cert. denied*, 457 U.S. 1120 (1982). Thus, neither the *Brnovich* concurrence nor *Washington*—which are not binding on this Court—actually concluded that private plaintiffs cannot enforce Section 2.

The *Arkansas* district court also characterized *Alexander v. Sandoval*, 532 U.S. 275 (2001), as invalidating *Morse* and *Allen*. *Arkansas*, 2022 WL 496908, at *16. That characterization is mistaken: *Sandoval* strongly supports the *opposite* conclusion. Although the holding for which *Sandoval* is best known involves the question whether a private right of action existed to enforce a *regulation* under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*, the case separately held that it "must be taken as given" that a private right of action exists to enforce the *statute*'s prohibition against disparate treatment, despite no express provision of one. *Sandoval*, 532 U.S. at 279. That is because the "reasoning" of an earlier decision finding a cause of action in another statute "embraced the existence of a private right to enforce Title VI as well." *Id.* at 280 (citing *Cannon* v. *University of Chi.*, 441 U.S. 667, 694 (1979)). Similarly, the private enforceability of the VRA's protections, including Section 2, was foundational to *Morse* and *Allen*. *See* pp. 4-6, *supra*. Moreover, the Supreme Court explained in *Sandoval* that Congress also "ratified" *Cannon*'s reasoning by making changes to Title VI that could not "be read except as validation of *Cannon*'s holding." *Sandoval*, 532 U.S. at 280 (citation omitted). As discussed below, Congress similarly ratified the reasoning of *Morse* and *Allen*. *See* pp. 9-11, *infra*. Accordingly, *Morse* and *Allen* remain binding as to whether private plaintiffs can enforce Section 2.

2.    *Eighth Circuit And Other Lower-Court Precedent*

The district court in *Arkansas* also brushed aside the Eighth Circuit's consideration of

this issue in *Roberts* as "dicta." *Arkansas*, 2022 WL 496908, at \*17; Def.'s Br. 7, ECF 18.  But

*Roberts* expressly held that "a private litigant attempting to protect his right to vote [is] a proper

party to effectuate the goals of the Act"; only after doing so did it separately conclude that an

unsuccessful *candidate* does not fall within that cause of action.  883 F.2d at 621 (citing *Allen*,

393 U.S. at 557).   A holding is "[a] court's determination of a matter of law pivotal to its

decision; a principle drawn from such decision." *Holding*, Black's Law Dictionary (11th ed.

2019).  The Eighth Circuit could not have concluded that an unsuccessful candidate lacks

statutory standing to sue under Section 2, without first resolving whether *some* private plaintiffs

can sue under the statute.  The resolution of that question in the affirmative was therefore pivotal,

making *Roberts*'s recognition of a private right of action binding precedent. [3]

*Roberts*'s holding accords with a vast body of district court and court of appeals decisions

that have held that Section 2 can be enforced by private plaintiffs. [4]  Indeed, since 1982, private

---

[3] The Eighth Circuit also suggested that private litigants, like the organizational plaintiffs here, "suing on behalf of persons who are unable to protect their own rights" fall within Section 2's private right of action.  *Roberts*, 883 F.2d at 621.

[4] *See, e.g.*, *Mixon* v. *Ohio*, 193 F.3d 389, 406 & n.12 (6th Cir. 1999) ("An individual may bring a private cause of action under Section 2 of the [VRA].");  *Singleton* v. *Merrill*, No. 2:21-cv-1530-AMM, 2022 WL 265001, at \*79 (N.D. Ala. Jan. 24, 2022) (three-judge court) (stating that to hold otherwise "would badly undermine the rationale offered by the Court in *Morse*" and that "[e]ven if the Supreme Court's statements in *Morse* about Section Two are technically dicta, they deserve greater respect than Defendants would have us give"), *appeal docketed*, No. 21-1086 (S. Ct. Feb. 7, 2022);  *League of Latin Am. Citizens* v. *Abbott*, No. EP-21-CV-00529-DCG-JES-JVB, 2021 WL 5762035, at \*1 (W.D. Tex. Dec. 3, 2021) (three-judge court) (denying a motion to dismiss arguing that Section 2 lacks a private right of action);  *Georgia State Conf. of NAACP* v. *Georgia*, 269 F. Supp. 3d 1266, 1275 (N.D. Ga. 2017) (three-judge court) ("Section 2 contains an implied private right of action," citing *Morse*, 517 U.S. at 232);  *Veasey* v. *Perry*, 29 F. Supp. 3d 896, 906 (S.D. Tex. 2014) (holding that "individual voter[s]" and organizations have the "power to enforce" Section 2);  *Perry-Bey* v. *City of Norfolk*,

plaintiffs have brought more than 350 cases alleging violations of Section 2 that have resulted in judicial decisions, without any court (until now) holding that Section 2 lacks a private right of action. *See* Ellen D. Katz *et al.*, *To Participate and Elect: Section 2 of the Voting Rights Act at 40*, Univ. Mich. L. Sch. Voting Rights Initiative (2022), https://voting.law.umich.edu (providing data that are the basis for this estimate).[5] The *Arkansas* district court's decision stands alone because it is wrong.

### 3.    Congressional Ratification

Congress has ratified the consensus view that Section 2 is privately enforceable. As the Supreme Court explained in *Lorillard* v. *Pons*, 434 U.S. 575, 580 (1978), "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." *See also Texas Dep't of Hous. & Cmty. Affs.* v. *Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 536 (2015) (concluding that Congress had "ratified the unanimous holdings of the Courts of Appeals" that plaintiffs can bring disparate-impact claims under the Fair Housing Act because it was "aware of [the] unanimous precedent" and "made a considered judgment to retain the relevant statutory text").

---

678 F. Supp. 2d 348, 362 (E.D. Va. 2009) ("The [VRA] creates a private cause of action"). At least one court has expressly rejected the *Arkansas* district court's holding that private plaintiffs cannot enforce Section 2, relying on "the extent and weight of the authority holding otherwise." *Alpha Phi Alpha Fraternity Inc.* v. *Raffensperger*, No. 1:21-CV-5337-SCJ, 2022 WL 633312, at *11 n.10 (N.D. Ga. Feb. 28, 2022).

    [5] *See also, e.g.*, *Brnovich*, 141 S. Ct. 2321; *Bartlett* v. *Strickland*, 556 U.S. 1 (2009); *League of United Latin Am. Citizens* v. *Perry*, 548 U.S. 399 (2006); *Voinovich* v. *Quilter*, 507 U.S. 146 (1993); *Chisom* v. *Roemer*, 501 U.S. 380 (1991); *Houston Lawyers' Ass'n* v. *Attorney Gen.*, 501 U.S. 419 (1991); *Thornburg* v. *Gingles*, 478 U.S. 30 (1986); *Missouri State Conf. of the NAACP* v. *Ferguson-Florissant Sch. Dist.*, 894 F.3d 924 (8th Cir. 2018), *cert. denied*, 139 S. Ct. 826 (2019); *Bone Shirt* v. *Hazeltine*, 461 F.3d 1011 (8th Cir. 2006); *Jeffers* v. *Clinton*, 730 F. Supp. 196 (E.D. Ark. 1989) (three-judge court), *aff'd*, 498 U.S. 1019 (1991).

In repeatedly amending the VRA, Congress has never questioned the uniform view that Section 2 is privately enforceable.  Pub. L. No. 91-285, 84 Stat. 314 (1970); Pub. L. No. 94-73, 89 Stat. 400 (1975); Pub. L. No. 97-205, 96 Stat. 131 (1982); Pub. L. No. 109-246, 120 Stat. 577 (2006).  And Congress has consistently cited *Allen* approvingly.  *See, e.g.*, S. Rep. No. 295, 94th Cong., 1st Sess. 16 (1975) (1975 Senate Report); H.R. Rep. No. 196, 94th Cong., 1st Sess. 9 (1975); H.R. Rep. No. 397, 91st Cong., 1st Sess. 4, 8 (1969).  Moreover, in the 1982 Senate Report that the Supreme Court called the "authoritative source for legislative intent" behind Section 2, *Thornburg* v. *Gingles*, 478 U.S. 30, 43 n.7 (1986); *see also Brnovich*, 141 S. Ct. at 2332-2333 (discussing the "oft-cited" 1982 Senate Report), Congress "reiterates the existence of the private right of action under section 2."  1982 Senate Report 30; *see also* H.R. Rep. No. 227, 97th Cong., 1st Sess. 32 (1981) (1981 House Report); pp. 13-19, *infra* (discussing changes made to the VRA evincing Congress's understanding that Section 2 is privately enforceable).

Congress had no reason to codify an express right of action to enforce Section 2.  The Supreme Court assumed the existence of a private right of action to enforce Section 2 in *City of Mobile* v. *Bolden*, 446 U.S. 55 (1980), which held that the original version of the statute reached only conduct prohibited by the Fifteenth Amendment.  *Id.* at 60-61.  Thus, when Congress amended Section 2 in response to *Bolden* to make clear that proof of discriminatory intent is not necessary to establish a violation of the statute, it had no need to revise the statute to expressly provide a private right of action.  Pointing to the continued existence of such a right was sufficient.  1982 Senate Report 30; 1981 House Report 32.  The Court's decision only a few years later in *Gingles*—a case brought by private plaintiffs—also reflects an understanding that Section 2 is privately enforceable.  *See* 478 U.S. at 50-52 (describing what "the minority group must be able to demonstrate" or "show" to establish a Section 2 violation—language that is inconsistent with the proposition that only the Attorney General can bring suit).  Similarly,

Congress had no need to codify a private right of action to enforce Section 2 when it amended the VRA in 2006 because, in the interim, the Court had explicitly stated that the statute was privately enforceable.  *Morse*, 517 U.S. at 232 (opinion of Stevens, J.); *accord id.* at 240 (Breyer, J., concurring).

**B.    The VRA's Text Shows Congress's Intent To Provide A Private Right Of Action To Enforce Section 2**

Even if the above discussion did not conclusively establish that private plaintiffs can enforce Section 2—and it does—Congress's intent to create a private right of action flows directly from the *Sandoval* framework.

As the district court in *Arkansas* correctly stated, "*Sandoval* and its progeny don't entirely foreclose the possibility of implied private rights of action."  *Arkansas*, 2022 WL 496908, at *17.  Far from it.  Under *Sandoval*, courts determine whether Congress intended to create a private right of action by:  (1) making the "critical" determination whether the statute in question contains "rights-creating language"; and, if so, (2) assessing whether Congress has "manifest[ed] an intent to create a private remedy."  532 U.S. at 288-289 (citation and internal quotation marks omitted).  Section 2 undeniably contains rights-creating language.  Moreover, Congress's intent to create a private remedy to enforce Section 2 is apparent from the very nature of voting rights and from several other VRA provisions that reflect Congress's understanding that Section 2 is privately enforceable.

*1.    Section 2 Contains Rights-Creating Language*

Although the *Arkansas* district court did not reach the "critical" question whether Section 2 contains rights-creating language, it indisputably does.  *Sandoval*, 532 U.S. at 288; *Arkansas*, 2022 WL 496908, at *10 n.76.  As the Supreme Court recognized in *Shelby County*, Section 2

imposes a "permanent, nationwide ban on racial discrimination in voting."  570 U.S. at 557.  The

statute provides:

> No voting qualification or prerequisite to voting or standard, practice, or
> procedure shall be imposed or applied by any State or political subdivision in a
> manner which results in a denial or abridgement of *the right of any citizen of the*
> *United States to vote* on account of race or color, or [membership in a language
> minority group].

52 U.S.C. § 10301(a) (emphasis added).  Thus, the statute "grants" individual citizens "a right to

be free from" discriminatory voting practices.  *Chisom* v. *Roemer*, 501 U.S. 380, 392 (1991)

(quoting H.R. Rep. No. 439, 89th Cong., 1st Sess. 23 (1965)).  *Allen* relied on similar language

to infer Congress's intent to create a private right of action to enforce Section 5.  393 U.S. at 555;

*see* 52 U.S.C. § 10304 (providing that "no person shall be denied the right to vote for failure to

comply with [a] qualification, prerequisite, standard, practice, or procedure" covered by, but not

approved under, Section 5).  And *Cannon* held that another statute (Title IX) contains a private

right of action by analogy to Section 5's "dispositive language."  441 U.S. at 690.  No serious

argument can be made that Section 2 lacks rights-creating language.

> 2.      *Congress Intended To Provide A Private Remedy To Enforce Section 2*

Congress's intent to provide a private remedy to enforce Section 2 is shown by:  (1) the

statute's rights-creating language; (2) the private nature of voting rights; and (3) several VRA

provisions that evince Congress's understanding that Section 2 can be privately enforced.

> a.      *Section 2's Rights-Creating Language Is Critical Evidence Of Congress's Intent*
> *To Provide A Private Remedy*

Because Section 2 plainly contains rights-creating language, a strong presumption exists

that Congress also intended to create a private remedy to enforce those rights.  That is because

"the right- or duty-creating language of [a] statute has generally been the most accurate indicator

of the propriety of implication of a cause of action."  *Cannon*, 441 U.S. at 690 n.13; *see also*

*Sandoval*, 532 U.S. at 288 (characterizing this component of the private-right-of-action analysis as "critical" because of *Cannon*'s observation that such language is typically dispositive).  To be sure, the VRA authorizes civil suits by the United States to enforce the statute's substantive provisions.  *See* 52 U.S.C. §§ 10308(d) and (e).  But interpreting the statute to require "each citizen  *  *  *  to depend solely on litigation instituted at the discretion of the Attorney General" would leave many Section 2 violations unremedied and "severely hamper[]" the statute's enforcement.  *Allen*, 393 U.S. at 556.

> b.   *Voting Rights Typically Are Privately Enforced*

The presumption that Congress intends to provide a private remedy where it includes rights-creating language is even stronger in the context of Section 2 because voting rights typically are considered "private rights."  *United States* v. *Raines*, 362 U.S. 17, 27 (1960) (holding that Congress did not exceed its constitutional authority by expressly authorizing the Attorney General to sue under Section 131 of the Civil Rights Act of 1957, 52 U.S.C. § 10101, to protect voting rights).  If Congress had declined to expressly authorize the Attorney General to enforce Section 2, there would be little doubt that it had intended to authorize suits by private plaintiffs to enforce the statute.  Given that voting rights inhere in individual citizens, Congress's decision to authorize suits by the United States to permit *public* enforcement of Section 2 does not overcome the strong presumption that Congress also intended *private* enforcement of this rights-creating statute.  *Allen*, 393 U.S. at 555 n.18 ("[W]e find merit in the argument that the specific references [in the VRA] to the Attorney General were included to give the Attorney General power to bring suit to enforce what might otherwise be viewed as 'private' rights." (quoting *Raines*, 362 U.S. at 27)).

  c.  *Several VRA Provisions Reflect Congress's Understanding That Section 2 Can Be Privately Enforced*

  Congress's intent to provide a private remedy to enforce Section 2 also can be inferred from the text of three other provisions of the VRA: Sections 12(f), 3, and 14(e).

  **Section 12(f)** provides:

> The district courts of the United States shall have jurisdiction of proceedings instituted pursuant to [Section 12 of the VRA] and shall exercise the same without regard to whether *a person asserting rights* under the provisions of [the VRA] shall have exhausted any administrative or other remedies that may be provided by law.

52 U.S.C. § 10308(f) (emphasis added).  The statutory term "person" is broad and expressly includes "corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals."  Dictionary Act, 1 U.S.C. § 1.  Section 12(f) therefore reflects Congress's intent that federal courts have subject-matter jurisdiction over suits to enforce the VRA's substantive provisions—including Section 2—brought by private plaintiffs whose rights have been violated, as well as by the United States (when it has been given litigating authority).  *Allen*, 393 U.S. at 555 n.18 (finding "force" to the argument that Section 12(f) "necessarily implies that private parties may bring suit under the [VRA]").  Indeed, because Congress repeatedly stated its intent for a private right of action to exist under Section 2—*see* 1982 Senate Report 30; 1981 House Report 32—it would have understood Section 12(f) as allowing district courts to hear such suits.

  The district court in *Arkansas* acknowledged that Section 12(f) might "cut in  *  *  * favor" of implying a private right of action, but then it wrongly interpreted the provision as merely "referencing" the Attorney General's authority under Section 12(e) of the statute. *Arkansas*, 2022 WL 496908, at *12.  That provision permits the Attorney General to seek a court order requiring an individual's vote to be counted if, within 48 hours of the polls closing, such

individual alleges to an election observer appointed under the VRA that she was improperly prohibited from voting.  52 U.S.C. § 10308(e).  According to the court, subsections 12(e) and (f) "work in combination such that the Attorney General of the United States can quickly bring a § 12(e) suit on behalf of a voter, while the voter can individually bring his or her own suit under state law or other federal law if such law provides a private right of action."  *Arkansas*, 2022 WL 496908, at *13.

This Court should reject that strained reading because Section 12(f) references "chapters 103 to 107" of the VRA—*i.e.*, the full panoply of the statute's substantive provisions—and not Section 12(e) alone.  And whereas subsection (e) provides a narrow authority to the Attorney General tailored to exigent circumstances surrounding casting of ballots, subsection (f) is an omnibus provision granting federal courts subject-matter jurisdiction over *all* VRA claims. *Compare* 52 U.S.C. § 10308(e), *with* 52 U.S.C. § 10308(f).  Finally, Section 12(e) *itself* provides federal courts with subject-matter jurisdiction over claims brought by the Attorney General under that provision.  52 U.S.C. § 10308(e) (providing that "the Attorney General may  *  *  *  file with *the district court* an application" under Section 12(e) and that "*[t]he district court* shall hear and determine such matters immediately after the filing of such application" (emphases added)). The *Arkansas* district court's interpretation of subsections (e) and (f) would render superfluous the latter's broad reference to "a person asserting rights under" the VRA.

**Section 3** similarly reflects Congress's understanding that private plaintiffs can enforce the VRA's substantive provisions—including Section 2—by providing specific remedies to "the Attorney General *or an aggrieved person*" in lawsuits brought "under any statute to enforce the voting guarantees of the fourteenth or fifteenth amendment."  52 U.S.C. § 10302 (emphasis added).  Congress added the term "aggrieved person" to each of Section 3's remedies when it amended the VRA in 1975, Pub. L. No. 94-73, § 401, 89 Stat. 404, knowing full well that *Allen*

had construed the VRA as permitting private suits.  393 U.S. at 556-557; *see also* 1975 Senate Report 40 (stating that an "aggrieved person" includes "an individual or an organization representing the interests of injured persons").

Although the district court in *Arkansas* conceded that an "aggrieved person" encompasses private plaintiffs, it concluded that private plaintiffs can invoke Section 3's provisions not under the VRA—the very statute in which they appear—but under some other statute that the court failed to identify.[6]  *Arkansas*, 2022 WL 496908, at *13 (citation omitted). And despite Section 3 being part of the VRA, the court concluded that remedies under that provision are not available in lawsuits brought under Section 2 as amended—which prohibits both intentional discrimination and voting practices with a discriminatory result—because the statute's safeguards now reach conduct that does not necessarily violate the Fourteenth or Fifteenth Amendment.  *Id.*

The district court's interpretation of Section 3 rests on a fundamental misunderstanding of when a statute "enforce[s] the voting guarantees of the fourteenth or fifteenth amendment." 52 U.S.C. § 10302.  It thought that any statute that provides broader protection than what is constitutionally prohibited under the Fourteenth or Fifteenth Amendments does not qualify.  But that is incorrect.  Both the Fourteenth and Fifteenth Amendments give Congress authority to "enforce" the Amendments' protections, U.S. Const. Amend. XIV, § 5 and Amend. XV, § 2,

---

[6]  At the preliminary-injunction hearing, the *Arkansas* district court suggested that Section 3's remedies can be invoked in private lawsuits brought under 42 U.S.C. § 1983 to enforce the Fifteenth Amendment.  Trial Tr., vol. 5, 1165-1166.  That would be an exceptionally oblique way of clarifying that relief is available under some other statute but not the one in which the language appears.  52 U.S.C. § 10302.  On the flip side, there is nothing odd about Congress's broad reference to statutes to enforce the voting guarantees of the Fourteenth and Fifteenth Amendments—as opposed to simply referencing the VRA itself—because both the VRA and other statutes enforce those constitutional rights.  *See, e.g.*, 42 U.S.C. § 1983; 52 U.S.C. § 10101.

through prophylactic legislation that extends beyond the prohibitions contained in section 1 of those amendments. *See Nevada Dep't of Hum. Res.* v. *Hibbs*, 538 U.S. 721, 727-728 (2003) (holding in the Fourteenth Amendment context that "Congress may enact so-called prophylactic legislation that proscribes facially constitutional conduct, in order to prevent and deter unconstitutional conduct"); *South Carolina* v. *Katzenbach*, 383 U.S. 301, 327 (1966) (rejecting the argument that the Fifteenth Amendment permits Congress to "do no more than to forbid violations of the Fifteenth Amendment in general terms").

Congress expressly characterized the 1982 amendments to Section 2 as prophylactic legislation to prevent constitutional violations. Pub. L. No. 89-110, 79 Stat. 437 (1965) (describing the original VRA as an act "[t]o enforce to enforce the fifteenth amendment to the Constitution of the United States"); 1982 Senate Report 40 ("[T]o enforce fully the Fourteenth and Fifteenth Amendments, it is necessary that Section 2 ban election procedures and practices that result in a denial or abridgment of the right to vote."); 1981 House Report 31 ("Section 2, as amended, is an exercise of the broad remedial power of Congress to enforce the rights conferred by the Fourteenth and Fifteenth Amendments."). Thus, Section 2 remains a "statute to enforce the voting guarantees of the fourteenth or fifteenth amendment" to which Section 3's private remedies apply. 52 U.S.C. § 10302.

**Section 14(e)** bears on the question presented in ways similar to Section 3. It provides:

> In any action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment, the court, in its discretion, may allow the prevailing party, *other than the United States*, a reasonable attorney's fee.

52 U.S.C. § 10310(e) (emphasis added). Like Section 3, Section 14(e) reflects Congress's understanding that private plaintiffs can bring claims under the VRA's substantive provisions—including Section 2. Congress added Section 14(e) to the statute in 1975, well aware of *Allen*'s holding. Pub. L. No. 94-73, § 402, 89 Stat. 404; *see also* 1981 House Report 32 (stating that if

17

private plaintiffs prevail under Section 2, "they are entitled to attorneys' fees under [Section 14(e)] and [42 U.S.C. §] 1988"); 1975 Senate Report 40 (finding "appropriate" the award of "attorneys' fees to a prevailing party in suits to enforce the voting guarantees of the Fourteenth and Fifteenth amendments, *and statutes enacted under those amendments*" because "Congress depends heavily on private citizens to enforce the fundamental rights involved" (emphasis added)).

The *Arkansas* district court dismissed Section 14(e) for the same reasons that it disregarded Section 3:  The provision applies only in "proceeding[s] to enforce the voting guarantees of the fourteenth or fifteenth amendment," which the court did not view as including Section 2 claims.  *Arkansas*, 2022 WL 496908, at *14 (quoting 52 U.S.C. § 10310(e)).  That reasoning is just as flawed with respect to Section 14(e) as it is with respect to Section 3.  In addition, the court suggested at the preliminary-injunction hearing that the term "prevailing party" in Section 14(e) might refer solely to prevailing defendant States and therefore does not encompass private plaintiffs.  Trial Tr., vol. 5, 1161.  That suggestion betrays a fundamental misunderstanding of fee-shifting provisions that are commonplace in civil-rights statutes, which are designed to incentivize aggrieved parties to bring suit.

"[P]revailing party" is a "legal term of art" with which Congress was intimately familiar in 1975.  *Buckhannon Bd. & Care Home, Inc.* v. *West Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 602-603 (2001) (specifically listing Section 14(e) of the VRA as an example of the term's technical use).  The Supreme Court construed a nearly identical provision in Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a-3(b), as allowing private plaintiffs to recover attorneys' fees whenever they secure a legal victory.  *Newman* v. *Piggie Park Enters., Inc.*, 390 U.S. 400, 401-402 (1968) (per curiam).  As the Court explained, Title II suits are "private in form only," and when a private plaintiff sues under that statute, "he does so not for himself alone

but also as a 'private attorney general.'" *Ibid.* (citations omitted).  For that reason, the Court construed the term "prevailing party" broadly "to encourage individuals injured by racial discrimination to seek judicial relief" because "[i]f successful plaintiffs were routinely forced to bear their own attorneys' fees, few aggrieved parties would be in a position to advance the public interest by invoking the injunctive powers of the federal courts." *Ibid.*

When Congress inserted the term "prevailing party" into Section 14, it therefore did so with the plain understanding that that term is tailored to statutes—like Section 2—that allow private plaintiffs to sue as private attorneys general.  *Shelby Cnty.* v. *Lynch*, 799 F.3d 1173, 1185 (D.C. Cir. 2015) ("Congress intended for courts to award fees under the VRA, pursuant to the *Piggie Park* standard, when prevailing parties help[] secure compliance with the statute."), *cert. denied*, 577 U.S. 1119 (2016); *accord Donnell* v. *United States*, 682 F.2d 240, 245 (D.C. Cir. 1982), *cert. denied*, 459 U.S. 1204 (1983).

Collectively, Sections 12(f), 3, and 14(e) of the VRA evince Congress's intent to provide a private remedy to enforce Section 2's rights-creating language.

**C.    In The Alternative, Private Plaintiffs Can Enforce The Rights Conferred By Section 2 Through Section 1983**

Even if the VRA did not evince Congress's intent to create a private remedy to enforce Section 2—and it does—the statute would be presumptively enforceable against Defendant here through Section 1983, the general remedy that Congress has provided for private plaintiffs to redress violations of federal rights committed by state actors.  *See* 42 U.S.C. § 1983; *Maine* v. *Thiboutot*, 448 U.S. 1, 4 (1980) (holding that "the plain language" of Section 1983 "undoubtedly embraces" suits by private plaintiffs to enforce federal statutory rights).

In *Gonzaga University* v. *Doe*, 536 U.S. 273 (2002), the Supreme Court set forth the test that governs whether private plaintiffs can enforce a federal statute through Section 1983.  First,

a court must "determine whether Congress *intended to create a federal right*" in the statute that a plaintiff seeks to enforce.  *Id.* at 283.  That analysis "is no different from the initial inquiry in an implied right of action case."  *Id.* at 285.  But once a court determines a federal right exists, that "right is presumptively enforceable by § 1983," and a plaintiff "do[es] not have the burden of showing an intent to create a private remedy because § 1983 generally supplies a remedy for the vindication of rights secured by federal statutes."  *Id.* at 284.

Although defendants can rebut the presumption that a federal right is enforceable through Section 1983, they can do so only by "demonstrat[ing] that Congress shut the door to private enforcement either [1] expressly, through specific evidence from the statute itself" or "[2] impliedly, by creating a *comprehensive enforcement scheme* that is *incompatible with individual enforcement under § 1983*."  *Gonzaga*, 536 U.S. at 284 n.4 (emphases added; citations and internal quotation marks omitted).  Specifically, a defendant could rebut the presumption by showing that Congress provided "a more restrictive *private remedy*" for violation of the relevant statute.  *City of Rancho Palos Verdes* v. *Abrams*, 544 U.S. 113, 121 (2005) (emphasis added).  But even an express private remedy does not "conclusively" foreclose the possibility that Congress meant such a remedy "to complement, rather than supplant § 1983."  *Id.* at 122.

Section 2 unquestionably is a rights-creating statute.  *See* pp. 11-13, *supra*.  Defendants therefore bear the burden to rebut the presumption that Section 2 is enforceable through Section 1983.  *Gonzaga*, 536 U.S. at 284.  Congress clearly did not "shut the door to private enforcement" of Section 2, *id.* at 284 n.4, because "there is certainly no specific exclusion of private actions" in the VRA, *Allen*, 393 U.S. at 555 n.18.  *Cf. Schwier* v. *Cox*, 340 F.3d 1284, 1297 (11th Cir. 2003) (holding that a voting provision of the Civil Rights Act of 1964, 52 U.S.C. § 10101, is enforceable by private plaintiffs through Section 1983).  Although the VRA plainly also permits the United States to enforce Section 2, the statute provides no explicit "private

20

judicial remedy," much less a "more restrictive" one than Section 1983.  *Abrams*, 544 U.S. at 121.  Section 2's *public* remedies do not constitute "a comprehensive enforcement scheme" and are "[]compatible with individual enforcement under § 1983," *Gonzaga*, 536 U.S. at 284 n.4.  The outsized role of private lawsuits in enforcing Section 2 also demonstrates that private enforcement "complement[s]" public enforcement of the statute.  *Abrams*, 544 U.S. at 122; *see also* Katz *et al.*, *supra*.

Accordingly, Section 2 is enforceable under Section 1983 if this Court concludes— contrary to the weight of authority—that no Section-2 specific implied private right of action exists to enforce the statute.[7]

### III.   CONCLUSION

Private plaintiffs have a cause of action under Section 2 of the Voting Rights Act.  Defendant relies on an erroneous outlier case inconsistent with decades of jurisprudence and Congressional ratification.  This Court should therefore deny Defendant's motion to dismiss on that basis.

---

[7] We note that Plaintiffs here invoke Section 1983 in their Complaint.  Compl. 1 & ¶ 10, ECF 1.

Dated:  May 20, 2022                    Respectfully submitted,

                                        KRISTEN CLARKE
                                        Assistant Attorney General

                                        PAMELA S. KARLAN
                                        Principal Deputy Assistant Attorney General
                                        Civil Rights Division


                            By:    */s/  Victor J. Williamson*
                                        T. CHRISTIAN HERREN, JR.
                                        TIMOTHY F. MELLETT
                                        VICTOR J. WILLIAMSON [DC 495783]
                                        Attorneys, Voting Section
                                        Civil Rights Division
                                        U.S. Department of Justice
                                        950 Pennsylvania Avenue NW, 4CON 8.1141
                                        Washington, D.C. 20530
                                        202-305-0036
                                        Victor.Williamson@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 20, 2022, I electronically filed the foregoing

Statement of Interest of the United States, using the CM/ECF system, which will send

notification of such filing to all counsel of record.


        */s/  Victor J. Williamson*
VICTOR J. WILLIAMSON [DC 495783]
U.S. Department of Justice
Civil Rights Division - Voting Section
950 Pennsylvania Avenue, N.W., 4CON 8.1141
Washington, DC 20530
202-305-0036
Victor.Williamson@usdoj.gov