# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

Turtle Mountain Band of Chippewa Indians,
Spirit Lake Tribe, Wesley Davis,
Zachery S. King, and Collette Brown,

                Plaintiffs,

vs.

Alvin Jaeger, in his official capacity as
Secretary of State of North Dakota,

                Defendant.

**ORDER DENYING MOTION TO DISMISS**

Case No. 3:22-cv-22

Before the Court is the Defendant Secretary of State of North Dakota Alvin Jaeger's (the "Secretary") motion to dismiss for lack of jurisdiction and for failure to state a claim filed on April 15, 2022. Doc. No. 17. Plaintiffs Turtle Mountain Band of Chippewa Indians ("Turtle Mountain"), Spirit Lake Tribe ("Spirit Lake"), Wesley Davis, Zachery S. King, and Collette Brown (together, the "Plaintiffs") responded in opposition on May 13, 2022. Doc. No. 24. The Secretary filed his reply on May 27, 2022. Doc. No. 26. The United States also filed a Statement of Interest. Doc. No. 25. For the reasons below, the motion to dismiss is denied.

## I.     FACTUAL BACKGROUND

Article IV, Section 2 of the North Dakota Constitution requires the state legislature to redraw the district boundaries of each legislative district following the census, which takes place at the end of each decade. Following the release of the 2020 Census results, North Dakota Governor Doug Burgum issued Executive Order 2021-17[1] on October 29, 2021. This Executive Order convened a special session of the Legislative Assembly for the purposes of "redistricting of

---

[1] N.D. Exec. Order No. 2021-17 (Oct. 29, 2021), available at: https://www.governor.nd.gov/executive-orders.

government." N.D. Exec. Order No. 2021-17 (Oct. 29, 2021). On November 10, 2021, the Legislative Assembly passed House Bill 1504, which provided for a redistricting of North Dakota's legislative districts. H.B. 1504, 67th Leg., Spec. Sess. (N.D. 2021). House Bill 1504 was signed into law by North Dakota Governor Doug Burgum on November 11, 2021. Id.

In this action, the Plaintiffs challenge the above redistricting plan passed by the North Dakota Legislative Assembly (i.e., House Bill 1504), and signed by the North Dakota Governor, under Section 2 of the Voting Rights Act ("VRA") ("Section 2"), 52 U.S.C. § 10301. Doc. No. 1. More specifically, the Plaintiffs bring a voter dilution claim and allege that the newly adopted redistricting plan dilutes the voting strength of Native Americans on the Turtle Mountain and Spirit Lake reservations, and in surrounding areas, in violation of Section 2 of the VRA. Id. at 29-31. In addition to the Section 2 challenge, the Plaintiffs also bring a claim under 42 U.S.C. § 1983 ("§ 1983"). Id. at 3. The Plaintiffs seek declaratory and injunctive relief prohibiting the Secretary from conducting elections under the allegedly dilutive redistricting plan and seek remedial relief from the State of North Dakota's failure to conduct elections under a plan that complies with the requirements of the VRA. Id. at 31. In lieu of an answer, the Secretary filed this motion to dismiss. Doc. No. 17.

## II.     LEGAL DISCUSSION

The Secretary's motion asks for dismissal on three grounds—first, that Turtle Mountain and Spirit Lake (together, the "Tribal Plaintiffs") lack standing to bring claims under the VRA. Id. at 8-13. Second, the Tribal Plaintiffs cannot allege a VRA claim because they are not "citizens" of the United States. Id. at 7-8. Finally, the Secretary argues that Section 2 of the Voting Rights Act does not provide a private right of action. Id. at 4-7. The Plaintiffs, for their part, argue the Tribal Plaintiffs have standing and that the citizenship requirement to bring a claim under the VRA has

been satisfied. Additionally, as to the private right of action, the Plaintiffs argue that when read and considered together, § 1983 provides a private remedy to enforce Section 2 of the VRA, and alternatively, Section 2 implies its own private right of action. The United States, in its Statement of Interest, similarly argues that Section 2 contains a private right of action, and alternatively, § 1983 provides a remedy that can be used to enforce Section 2 of the VRA. Doc. No. 25.

## A.    Standing

Turning first to the issue of standing, the Secretary argues that the Tribal Plaintiffs should be dismissed for lack of standing. The Tribal Plaintiffs respond that standing can be established through the individual Plaintiffs, the diversion of the Tribal Plaintiffs' resources, or the principles of organizational standing. The Court agrees that the Tribal Plaintiffs have standing.

### 1.    Applicable Law

Article III of the United States Constitution limits the subject matter jurisdiction of federal courts to "cases" and "controversies." U.S. Const. art. III, § 2. This jurisdictional limitation requires every plaintiff to demonstrate it has standing when bringing an action in federal court. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). "It is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." Warth v. Seldin, 422 U.S. 490, 518 (1975). The essence of standing is whether the party invoking federal jurisdiction is entitled to have the court decide the merits of the dispute. Id. at 498.

"[T]he irreducible constitutional minimum of standing contains three elements: First, the plaintiff must have suffered an 'injury in fact' . . . Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant' . . . Third, it must be 'likely,' as opposed to merely

'speculative,' that the injury will be 'redressed by a favorable decision.'" Sierra Club v. Robertson, 28 F.3d 753, 757-58 (8th Cir. 1994) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)).

To show an injury-in-fact, a plaintiff must show "an invasion of a legally-protected interest which is (a) concrete and particularized and (b) actual and imminent, not conjectural or hypothetical." Id. Merely alleging an injury related to some cognizable interest is not enough; rather, a plaintiff "must make an adequate showing that the injury is actual or certain to ensue." Id. If a plaintiff lacks Article III standing, a federal court has no subject-matter jurisdiction over the claim and the action must be dismissed. Higgins Elec., Inc. v. O'Fallon Fire Prot. Dist., 813 F.3d 1124, 1128 (8th Cir. 2016).

### 2. Individual Standing

The Secretary does not dispute that the individual Plaintiffs in this matter have standing to bring this claim under Section 2. Instead, the Secretary's argument is focused on the Tribal Plaintiffs' lack of standing. When there are multiple plaintiffs, at least one of the plaintiffs must demonstrate standing for each claim and each form of relief being sought. Spirit Lake Tribe v. Jaeger, No. 1:18-CV-222, 2020 WL 625279, at *3 (D.N.D. Feb. 10, 2020). One plaintiff having standing to bring a specific claim generally confers standing to all plaintiffs on that claim. See Village of Arlington Heights v. Metropolitan Hous. Dev. Corp., 429 U.S. 252, 264 (1977); see also Jones v. Gale, 470 F.3d 1261, 1265 (8th Cir. 2006). Here, the individual Plaintiffs' right to sue has not been challenged, and even if it had been, the argument would fail, as individuals residing in an allegedly aggrieved voting district have standing to bring a claim under the VRA. See Gill v. Whitford, 138 S. Ct. 1916 (2018); see also Roberts v. Wamser, No. 88-1138, 1989 WL 94513 (8th Cir. Aug. 21, 1989). Because the individual Plaintiffs have standing, there is no authority to

4

dismiss the Tribal Plaintiffs from the action due to lack of standing.

### 3. Diversion of Resources

Moreover, even without the individual Plaintiffs, the Tribal Plaintiffs have standing to bring a Section 2 claim. As this Court noted in Spirit Lake, "[t]he Court can see no reason why a federally recognized Indian Tribe would not have standing to sue to protect the voting rights of its members when private organizations like the NAACP and political parties are permitted to do so." 2020 WL 625279, at *5. Here, just as in Spirit Lake, the Tribal Plaintiffs assert they have been forced to divert resources in response to the North Dakota Legislative Assembly's actions. Doc. No 1, ¶¶ 43-44. This is sufficient to establish standing. See Spirit Lake Tribe, 2020 WL 625279, at *4. Further, and consistent with Spirit Lake, because standing has been established in alternative ways, the Court need not examine the merits of associational standing or standing under *parens patriae*. Id.

### 4. Citizenship

The Secretary goes on to argue that the Tribal Plaintiffs cannot advance a VRA claim because they are not "citizens" of the United States. In Spirit Lake, this Court held that this argument is a challenge to standing. 2020 WL 625279, at *4. As discussed above, because the individual Plaintiffs have standing, there is no standing issue as to the Tribal Plaintiffs. Nevertheless, this Court held in Spirit Lake that the Indian Tribes do have standing to protect the voting rights of its members. Id. The same analysis applies here, and the Secretary's argument is without merit.

## B. Private Right of Action

With the standing issues resolved, the Court turns to the Secretary's argument that Section 2 of the VRA does not provide a private right of action, and as a result, the complaint fails to state

a claim (due to lack of subject matter jurisdiction) and the case must be dismissed. The Plaintiffs counter that their § 1983 claim provides the remedy necessary to enforce Section 2 of the VRA, and alternatively, the plain language of Section 2 implies a private right of action. The Court finds that § 1983 provides a private remedy for violations of Section 2 of the VRA, and therefore, it is not necessary for the Court to decide whether Section 2, standing alone, contains a private right of action.

1.  **Relevant Legal Background**

The question of whether Section 2 of the VRA contains a private right of action presents a novel legal question. In a recent United States Supreme Court decision involving a Section 2 case, Justice Gorsuch (joined by Justice Thomas) concurred with the majority opinion but wrote separately to "flag" an issue that was not before the Court. Brnovich v. Democratic Nat'l Comm., 141 S. Ct. 2321, 2350, 210 L. Ed. 2d 753 (2021). His concurrence stated, in relevant part:

> I join the Court's opinion in full, but flag one thing it does not decide. Our cases have assumed—without deciding—that the Voting Rights Act of 1965 furnishes an implied cause of action under § 2. Lower courts have treated this issue as an open question.

Id. Following Brnovich, the United States District Court for the Eastern District of Arkansas took notice of Justice Gorsuch's concurrence, and when presented with a case alleging voter dilution among African American voters, examined whether Section 2, standing alone, contains a private right of action. See generally Arkansas State Conf. NAACP v. Arkansas Bd. of Apportionment, No. 4:21-CV-01239-LPR, 2022 WL 496908 (E.D. Ark. Feb. 17, 2022). In what can only be described a thorough and well-reasoned—though admittedly, controversial—order, the district court found that Section 2 of the VRA, standing alone, does not provide a private right of action.[2]

---

[2] Notably, the district court explicitly states it did not consider whether Section 2 contains rights-creating language and that its decision was premised on the lack of a private remedy. Arkansas State Conf. NAACP, WL 496908, at *10.

Id. at 10. This lack of remedy inevitably led the district court to conclude that private individuals do not have a private right of action to enforce Section 2, and the case was dismissed for lack of subject matter jurisdiction after the Attorney General of the United States declined to join the lawsuit. Id. at 23. Here, the Secretary encourages this Court to follow Arkansas State Conf. NAACP and find that the Plaintiffs do not have a private right of action under Section 2 of the VRA—leading to dismissal of the complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.

### 2. Applicable Law

"Subject matter jurisdiction refers to the court's power to decide a certain class of cases." LeMay v. United States Postal Serv., 450 F.3d 797, 799 (8th Cir. 2006) (citing Continental Cablevision of St. Paul, Inc. v. United States Postal Serv., 945 F.2d 1434, 1437 (8th Cir. 1991)). "It is axiomatic that the federal courts lack plenary jurisdiction." Southwestern Bell Tel. Co. v. Connect Communications Corp., 225 F.3d 942, 945 (8th Cir. 2000). Rather, "[t]he inferior federal courts may only exercise jurisdiction where Congress sees fit to allow it." Id. Put simply, federal courts cannot hear cases that fall outside of the limited jurisdiction granted to them. Bhd. of Maint. of Way Emps. Div. of Int'l Bhd. of Teamsters v. Union Pac. R. Co., 475 F. Supp. 2d 819, 831 (N.D. Iowa 2007).

Federal Rule of Civil Procedure 8(a) requires a pleading only to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Nevertheless, a complaint may be dismissed for "failure to state a claim upon which relief can be granted," and a party may raise that defense by motion. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is

plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A plaintiff must show that success on the merits is more than a "sheer possibility." Id.

### 3. Section 1983

Whether the VRA contains a private right of action is significant because, without it, the Court does not have subject matter jurisdiction to decide a Section 2 claim that is not joined by the United States Attorney General. At first blush, the Secretary's argument, and the decision in Arkansas State Conf. NAACP, are compelling. However, unlike the complaint in Arkansas State Conf. NAACP, the Plaintiffs here seek relief under § 1983 and Section 2 of the VRA. So, the Plaintiffs argue they have a private right of action to support their Section 2 claim because the complaint seeks to enforce Section 2 in conjunction with § 1983. The Secretary, for his part, argues that Congress effectively shut the door to a § 1983 remedy. However, the Court is not persuaded.

Section 1983 provides a remedy for violations of federal rights committed by state actors. Gonzaga Univ. v. Doe, 536 U.S. 273, 284, 122 S. Ct. 2268, 2276 (2002). Rights are enforceable through § 1983 only if it is clear that Congress intended to establish an individual right. Gonzaga Univ., 536 U.S. 273, at 284. "Once a plaintiff demonstrates that a statute confers an individual right, the right is presumptively enforceable by § 1983." Id. This presumption of enforceability is only overcome in cases where Congress intended to foreclose any § 1983 remedy. Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n, 453 U.S. 1, 19–20, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981); see also Alexander v. Sandoval, 532 U.S. 275, 290, 121 S. Ct. 1511, 1521, 149 L. Ed. 2d 517 (2001).

Prior to Gonzaga University, the United States Supreme Court's case law regarding what rights are enforceable through § 1983, in the Court's words, "may not [have been] models of clarity." Gonzaga Univ., 536 U.S. 273, at 278. As such, the Gonzaga University Court sought to

clarify the test for what rights can be enforced through § 1983. The Supreme Court held that the initial inquiry—determining whether a statute confers any right at all—is no different from the initial inquiry in an implied right of action case, the express purpose of which is to determine whether or not a statute confers a right on a particular class of person. Id. at 258. Accordingly:

> A court's role in discerning whether personal rights exist in the § 1983 context should therefore not differ from its role in discerning whether personal rights exist in the implied right of action context. Both inquiries simply require a determination as to whether or not Congress intended to confer individual rights upon a class of beneficiaries.

Id. at 285 (cleaned up). In sum, § 1983 can create a remedy for a plaintiff when one does not already exist. When a statute does not provide an explicit right of action, the analysis of whether a plaintiff may bring a § 1983 claim is dependent on whether the statute sought to be enforced through § 1983 confers rights on a particular class of people.

Importantly (and likely not coincidentally), Arkansas State Conf. NAACP, which is the only factually similar case cited by the Secretary in support of his motion, specifically notes that § 1983 was not alleged in the complaint at issue in that case, and that because Section 2 lacked a private right of action, there was no need to consider whether the text of the statute conferred a right. 2022 WL 496908, at *10. Stated another way, the analysis in Arkansas State Conf. NAACP ended because there was no private remedy available, and no other claims were alleged. However, here, because a § 1983 claim was alleged, there is a presumption of a private remedy, should Section 2 create a right. This fact is significant and undoubtably distinguishes Arkansas State Conf. NAACP. So, the questions this Court is left with, then, is whether Section 2 confers rights on a particular class of people, and if so, whether the Secretary can rebut the presumption that § 1983 provides a remedy.

### 4. Text of Section 2

Turning to the first question, it is undisputed that Section 2 of the VRA does not explicitly contain a private right of action, making the Plaintiffs' claim contingent on the existence of an implied private right of action. As alluded to in Gonzaga University, to enforce a statute under an implied private right of action, the Plaintiffs must satisfy two requirements: (1) the statute's text must contain language that confers a right, and (2) the party must demonstrate the availability of a private remedy. Sandoval, 532 U.S. at 286–88, 121 S.Ct. 1511. As noted above, § 1983 provides a private remedy. The Court now turns to whether the text of Section 2 confers a right. As relevant here, Section 2 states:

> No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color . . ..

52 U.S.C. § 10301(a). The plain language of Section 2 mandates that no government may restrict a citizen's right to vote based on an individual's race or color. It is difficult to imagine more explicit or clear rights creating language. It cannot be seriously questioned that Section 2 confers a right on a particular class of people. And indeed, the Secretary does not argue that Section 2 does not contain rights creating language. When this right is taken collectively with the remedy available through § 1983, an implied private right of action is present, and the motion to dismiss must be denied, unless the Secretary can show that the VRA's enforcement scheme demonstrates congressional intent to preclude a § 1983 remedy. See generally Gonzaga Univ., 536 U.S. 273.

### 5. The VRA's Enforcement Scheme

To that end, a party can rebut the presumption that a federal right is enforceable through § 1983 by demonstrating congressional intent to foreclose a § 1983 remedy. See id. at 284 n.4. Congressional intent may be found directly in the statute creating the right or inferred from the

10

statute's creation of a "comprehensive enforcement scheme that is incompatible with individual enforcement." City of Rancho Palos Verdes, Cal. v. Abrams, 544 U.S. 113, 120 (2005). An express, private means of redress in the statute itself is ordinarily an indication that Congress did not intend to leave open a remedy under § 1983. Blessing v. Freestone, 520 U.S. 329, 341 (1997).

Section 2 does not contain any language creating a private remedy distinct from § 1983. In fact, Section 2 proscribes no remedy at all. As a result, the Court cannot conclude that anything in Section 2 indicates congressional intent to specifically prevent enforcement through § 1983 by providing a separate private remedy.

Now to the enforcement scheme. The Secretary argues Section 12 of the VRA ("Section 12"), 52 U.S.C. § 10308, provides a comprehensive scheme to enforce Section 2 that is incompatible with private enforcement. Admittedly, Section 12 contains no express, private remedies and provides the right to the Attorney General to seek an injunction and potential fines and imprisonment for violations of the VRA. See 52 U.S.C. § 10308. Critically, though, there is also nothing in Section 12 that is incompatible with private enforcement, as there can be collective and private remedies available for the same federal statute. See Cannon v. Univ. of Chicago, 441 U.S. 677, 717 (1979) (collective and private remedies available for violation of Title IX). Tellingly, the VRA itself seems to anticipate private litigation, as it contains a provision allowing for court-ordered attorneys' fees for "the prevailing party, other than the United States." 52 U.S.C. § 10310(e).

Further, there has been private enforcement of Section 2 since the VRA's inception. See Allen v. State Bd. of Elections, 393 U.S. 544, 555 (1969); Ala. State Conf. of NAACP v. Alabama, 949 F.3d 647, 652 (11th Cir. 2020); Mixon v. Ohio, 193 F.3d 389, 398–99 (6th Cir. 1999); Singleton v. Merrill, No. 2:21-cv-1530-AMM, 2022 WL 265001, at *79 (N.D. Ala. Jan. 24, 2022).

These private enforcement actions have co-existed with collective enforcement brought by the United States for decades. See, e.g., Allen, 393 U.S. 544, at 555.

Given the lack of evidence that Congress intended to provide an explicit private remedy, and the robust history of the private and collective rights co-existing, the Court cannot conclude that private enforcement of Section 2 is incompatible with the enforcement scheme in Section 12. As a result, the Secretary has not rebutted the presumption that § 1983 may provide a remedy for the Plaintiffs in this case, the Court has subject matter jurisdiction to entertain this private claim, and the complaint does not fail to state a claim upon which relief can be granted. Accordingly, the motion to dismiss is denied. Because this Court finds that Section 2 may be enforced through § 1983, the Court need not decide whether Section 2 of the VRA, standing alone, contains an implied private right of action.

### III.  CONCLUSION

The Court has carefully reviewed the record, the parties' filings, and the relevant legal authority. For the reasons above, the Secretary's motion to dismiss for lack of jurisdiction and failure to state a claim (Doc. No. 17) is **DENIED**.

**IT IS SO ORDERED**.

Dated this 7th day of July, 2022.

*/s/ Peter D. Welte*
Peter D. Welte, Chief Judge
United States District Court