IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
EASTERN DIVISION

| | |
|---|---|
| Turtle Mountain Band of Chippewa Indians, Spirit Lake Tribe, Wesley Davis, Zachery S. King, and Collette Brown<br><br>Plaintiffs,<br><br>vs.<br><br>Michael Howe, in his official capacity as Secretary of State of North Dakota,<br><br>Defendant. | Case No. 3:22-cv-00022<br><br><br>**DEFENDANT MICHAEL HOWE'S TRIAL MEMORANDUM** |

\*\*\*          \*\*\*          \*\*\*

Defendant Michael Howe, in his official capacity as Secretary of State of North Dakota ("Defendant" or "Defendant Howe"), submits this trial memorandum in accordance with the Court's *Order for Final Pretrial Conference and Order Setting Trial Preparation Deadlines* (Doc. 34).

**I.    General Statement of the Case**

The North Dakota Legislative Assembly engaged in a thorough legislative redistricting process following the 2020 U.S. Census. As part of that process, various meetings were held by the Tribal and State Relations Committee (including meetings physically held on the Spirit Lake and Turtle Mountain Reservations) and the Redistricting Committee, to hear testimony from citizens, including Native Americans and Tribal representatives. While there was significant testimony from Native Americans and Tribal representatives in favor of the creation of subdistricts around Reservations, throughout most of the legislative process, there was no mention of a single district encompassing both the Spirit Lake and Turtle Mountain Reservations. At the very end of the legislative process, the same day the Redistricting Committee submitted its final report to Legislative Management (which included subdistricts around each of the Reservations where it was mathematically possible to benefit Native American voters), for the first time, the two Tribal

Plaintiffs requested via letter that the Legislature create a single district without subdistricts that encompassed both the Spirit Lake and Turtle Mountain Reservations. The North Dakota Legislative Assembly passed and the North Dakota Governor signed into law House Bill 1504, which was consistent with the Redistricting Committee's final report.

The Plaintiffs in this lawsuit are two federally recognized Tribes (Turtle Mountain Band of Chippewa Indians and Spirit Lake Tribe) with reservations located in the legislative districts at issue, and several individual Native Americans (Wesley Davis, Zachery S. King, and Collette Brown) who reside in the legislative districts at issue. Plaintiffs allege under the redistricting plan adopted by the State, "Native American voters in northeastern North Dakota are 'cracked' in District 9B and District 15 where they constitute a minority of the voting age population. The remaining Native American population is packed into District 9A, where Native Americans constitute a supermajority of the voting age population." Doc. 1, ¶ 126. Plaintiffs claim this results in dilution of the votes of the individual Plaintiffs (Wesley Davis, Zachery S. King, and Collette Brown, and of other members of Plaintiffs Turtle Mountain Band of Chippewa Indians and Spirit Lake Tribe, allegedly in violation of Section 2 of the Voting Rights Act. *Id.* at ¶ 131. Plaintiffs' Complaint contains a single count, and it is based solely on Section 2 of the Voting Rights Act. *Id.* at ¶¶ 124-31. In their prayer for relief, Plaintiffs seek a declaration that House Bill 1504 violates Section 2 of the Voting Rights Act, an injunction preventing Defendant Howe from administering, enforcing, preparing for, or permitting the nomination or election of members of the Legislative Assembly from the challenged districts, an order for the Legislative Assembly to enact a new redistricting plan by a reasonable deadline, or an order establishing a new redistricting plan if the Legislative Assembly fails to meet the deadline. Doc. 1, p. 31. In their Supplemental Complaint (Doc. 44), Plaintiffs added the following additional supplemental request for relief: "Order a special election for a newly configured state legislative district in November 2024 to ensure that Native American voters in Turtle Mountain and Spirit Lake are not forced to wait until 2026—six years into the decennial redistricting cycle—in order to be afforded an equal opportunity to elect

their candidates of choice to the state senate." Doc. 44, p. 6.  In their Complaint and Supplemental Complaint, Plaintiffs seek the creation of a new alternatively configured multimember District 9 (with no subdistricts such that the electors in the district elect one senator and two members of the House), which encompasses and combines both the Turtle Mountain Reservation and the Spirit Lake Reservation.  Doc. 1, ¶ 128; Doc. 44, ¶¶ 21, 29.  Plaintiffs provided two proposed alternative remedial district maps in the expert report of one of their disclosed experts, Dr. Loren Collingwood.

Defendant asserts the enacted map of the challenged districts complied with the Voting Rights Act and took into account the significant legislative testimony of various Native Americans and Tribal representatives, with the exception of the Tribal Plaintiffs' last-minute request for a combined district encompassing both Reservations.  The enacted District 9 (which includes the Turtle Mountain Reservation) grants to Native Americans the opportunity to elect the candidates of choice in that District (accounting for all three legislative seats, Native American candidate of choice elected in more than 50% of elections based on analysis of past elections).  Pulling in the population of the Spirit Lake Reservation into a single district with the Turtle Mountain Reservation raises the odds of all of the Native American candidates of choice being elected well beyond a 50% opportunity to elect, exceeding 90%.  Defendant asserts Plaintiffs' alternative remedial district maps, and any other conceivable map that encompasses and combines both the Turtle Mountain Reservation and the Spirit Lake Reservation go well beyond the requirements of the Voting Rights Act and would constitute a racial gerrymander.  Plaintiffs first demonstrative plan has a Native American voting age population of 66.1%, while their second demonstrative plan has a Native American voting age population of 69.1%.  However, importantly, based on an analysis of past elections, Plaintiff's proposed remedial maps would result in the Native American candidate of choice being elected in more than 90% of the elections for all three legislative seats in the proposed district, which Plaintiffs' own expert admitted in his deposition is more than is required by the Voting Rights Act.  Any conceivable map that combines the two Reservations, as

demanded by Plaintiffs and as would be required to pull additional Native Americans into the district while also respecting the political subdivision lines of the Reservations boundaries, would give a similarly extremely high likelihood of the Native American candidate of choice being elected to all three legislative seats in a new district, which is much more than an opportunity to elect. North Dakota should not be required to abandon its as-drawn districts which comply with the Voting Rights Act, to adopt a new map that does not as well comply with traditional redistricting criteria, goes beyond the requirements of the Voting Rights Act, and constitutes an impermissible gerrymander.  Also, as discussed below, Defendant will challenge at trial Plaintiffs' claims to have met the legal standard to prevail in this case.

**II.      Legal Issues**

The United States Supreme Court has identified three preconditions (the *Gingles* preconditions), which are necessary to proceed with a vote dilution claim under Section 2 of the Voting Rights Act.  *Thornburg v. Gingles*, 478 U.S. 30, 50-51 (1986).  The three *Gingles* preconditions are:

> 1. "[T]he minority group...is sufficiently large and geographically compact to constitute a majority in a single-member district,"
>
> 2. "[T]he minority group...is politically cohesive," and
>
> 3. "[T]he white majority votes sufficiently as a bloc to enable it—in the absence of special circumstances...—usually to defeat the minority's preferred candidate."

*Id*.  Plaintiff will be put to its burden of proof as to the three *Gingles* factors.  Defendant will challenge the Plaintiffs' claim that the first and third *Gingles* factors are met based upon the expert testimony of Defendant's expert, Dr. M.V. Trey Hood III ("Dr. Hood").

> If all three preconditions are established, then a court must consider the totality of the circumstances and determine, based upon a searching practical evaluation of the past and present reality, whether the political process is equally open to minority voters.  This determination is peculiarly dependent upon the facts of each case,' and requires an intensely local appraisal of the design and impact of the contested electoral mechanisms.  In undertaking this practical evaluation, courts look to the non-exhaustive list of "typical factors" identified in the Senate Report

accompanying the 1982 amendments to the VRA ("Senate Factors"). *Missouri State Conf. of the Nat'l Ass'n for the Advancement of Colored People v. Ferguson-Florissant Sch. Dist.*, 201 F. Supp. 3d 1006, 1016 (E.D. Mo. 2016), *aff'd*, 894 F.3d 924 (8th Cir. 2018) (internal citations and quotations omitted). The Senate Factors include:

1. The history of official voting-related discrimination in the state or political subdivision;
2. The extent to which voting in the elections of the state or political subdivision is racially polarized;
3. The extent to which the state of political subdivision has used voting practices or procedures that tend to enhance the opportunity for discrimination against the minority group, such as unusually large election districts, majority-vote requirements, and prohibitions against bullet voting;
4. The exclusion of members of the minority group from candidate slating processes;
5. The extent to which minority group members bear the effects of discrimination in areas such as education, employment, and health, which hinder their ability to participate effectively in the political process;
6. The use of overt or subtle racial appeals in political campaigns; and
7. The extent to which members of the minority group have been elected to public office in the jurisdiction.

S.Rep. No. 97-417, 97th Cong., 2d Sess. (1982), pages 28-29. Defendant puts Plaintiffs to their burden of proof and will cross-examine their witnesses at trial regarding the Senate Factors/totality of the circumstances claims.

Additionally, the remedial district maps proposed by Plaintiffs, and any map that meets the criteria demanded by Plaintiffs, involved creation of a new district that connects the Spirit Lake Reservation with the geographically distant Turtle Mountain Reservation by way of a narrow land bridge, which Defendant challenges as an impermissible gerrymander. *See Lower Brule Sioux*

*Tribe v. Lyman Cnty.*, No. 3:22-CV-03008-RAL, 2022 WL 4008768, at *26 (D.S.D. Sept. 2, 2022) (citing *Cottier v. City of Martin*, 551 F.3d 733, 743 (8th Cir. 2008); *Swann v. Charlotte–Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971); *Covington v. North Carolina*, 270 F. Supp. 3d 881, 889 (M.D.N.C. 2017)); *Sensley v. Albritton*, 385 F.3d 591, 595–98 (5th Cir. 2004).

Plaintiff's proposed remedial maps (and other maps that combine the two Reservations) would result in the Native American candidate of choice being elected in more than 90% of the elections for all three legislative seats in the proposed district, which goes beyond the requirement of the Voting Rights Act to grant an opportunity to elect, even under *Bone Shirt v. Hazeltine*, 461 F.3d 1011, 1017-18 (8th Cir. 2006) and as admitted by Plaintiffs' expert.  The United States Supreme Court "has held… that § 2 can require the creation of a 'majority-minority' district, in which a minority group composes a numerical, working majority of the voting-age population…." *Bartlett v. Strickland*, 556 U.S. 1, 129 S. Ct. 1231, 1236 (2009) (citing *Voinovich v. Quilter*, 507 U.S. 146, 154–155 (1993)).  Native American voters must only be given an opportunity to elect the candidates of their choice (*see Bartlett v. Strickland*, 556 U.S. 1 (2009)), which is vastly exceeded in the proposed remedial maps.  Unlike Turtle Mountain, the only way to enable the Native American voters in the Spirit Lake Reservation to usually elect their candidate of choice is to racially gerrymander a district that combines the Spirit Lake Reservation with the geographically distant Turtle Mountain Reservation with a narrow land bridge.  The Voting Rights Act does not require this.

### III. General Statement of the Evidence to be Offered

A significant portion of the trial will be testimony from expert witnesses on both sides. Defendant's expert, Dr. Hood, will testify consistent with his expert report, with the figures, tables, and images from his expert report, and with the material he relied on in forming his opinions.  Dr. Hood's testimony and the related exhibits are of a highly technical nature and involve analysis of Census data and analysis and critique of the opinion of Plaintiff's expert Dr. Loren Collingwood.

Defendant Howe also intends to introduce the entire legislative record from the subject redistricting into evidence in this case. Witnesses will be questioned regarding various documents contained within the legislative record (including cross-examinations of Douglas Yankton, Jamie Azure, Collette Brown, and Matthew Campbell, each of whom testified in legislative meetings). Defendant Howe believes the entire legislative record should be entered into evidence in this case, to be available for the Court to reference in its Findings of Fact after trial. The legislative record includes all of the public legislative documents with respect to the 2021 redistricting in the following legislative meetings:

        July 29, 2021 Redistricting Committee Meeting

        Aug. 17, 2021 Tribal and State Relations Committee Meeting

        Aug. 26, 2021 Redistricting Committee Meeting

        Aug. 31, 2021 Tribal and State Relations Committee Meeting

        Sept. 1, 2021 Tribal and State Relations Committee Meeting

        Sept. 8, 2021 Redistricting Committee Meeting

        Sept. 15 and 16, 2021 Redistricting Committee Meeting

        Sept. 22 and 23, 2021 Redistricting Committee Meeting

        Sept. 28 and 29, 2021 Redistricting Committee Meeting

        Nov. 8, 2021 Joint Redistricting Committee Meeting

        Nov. 9, 2021 Joint Redistricting Committee Meeting

        Nov. 9, 2021 House Floor Debate and Vote

        Nov. 10, 2021 Senate Floor Debate and Vote

These documents (**D301 through D416**) were certified by Kylah E. Aull (**D300**), Library and Records Manager for the North Dakota Legislative Council, and will be introduced at trial as certified copies of public records without live testimony from Ms. Aull in accordance with Rule 44 of the Federal Rules of Civil Procedure and Rule 902 of the Federal Rules of Evidence.

As part of the legislative record, Defendant Howe will also introduce transcripts of each of the foregoing legislative meetings (with the exception of the July 29, 2021 Redistricting Committee Meeting, for which no video or transcript were ever created). These transcripts (**D418**

**through D432**) were certified by Matthew Sagsveen (**D417**), Director of Natural Resources and Native American Affairs Division of the North Dakota Office of Attorney General, and will be introduced at trial as certified copies of public records without live testimony from Mr. Sagsveen in accordance with Rule 44 of the Federal Rules of Civil Procedure and Rule 902 of the Federal Rules of Evidence. In addition to the transcripts being introduced, Defendant will introduce videos of the foregoing legislative meetings (**D433 through D447**). Based on meet and confer meetings, counsel for Plaintiffs and counsel for Defendant each intend to show relevant portions of the videos at trial, with reference to the timestamp and/or transcript pages.

In addition to the foregoing legislative records, Defendant Howe intends to introduce some relevant background redistricting documents kept by his office (**D449 through D451**), including House Bill No. 1397, House Bill No. 1504, and Executive Order 2021-17, which are certified by Sandra McMerty (**D448**), Deputy Secretary of State for the State of North Dakota, and will be introduced at trial as certified copies of public records without live testimony from Ms. McMerty in accordance with Rule 44 of the Federal Rules of Civil Procedure and Rule 902 of the Federal Rules of Evidence. Defendant also intends to introduce exhibits establishing background information regarding the 2020 Census (**D505 through D507**), upon which the subject redistricting in 2021 was based.

Additionally, Defendant will call Erika White, the State Election Director, and Brian Nybakken, the Elections Administration System Manager, both employees in the office of Secretary of State of North Dakota, to testify regarding election procedures in North Dakota and the duties of state and local election officials, including in relation to redistricting and in relation to Native American issues, and the impact of redistricting on elections in North Dakota, and the impact of Plaintiffs' requested relief. Defendant will also present evidence regarding State outreach to the Tribes during the 2021 redistricting process.

IV.     **Evidentiary or Procedural Problems**

Counsel for Defendant does not expect any evidentiary or procedural problems at trial. Counsel for the parties have met and conferred multiple times in good faith to reach an understanding on various trial issues.

For the Court's information, Counsel for the parties have discussed how to handle the potential testimony of Matthew Campbell ("Campbell"). Plaintiffs have filed *Plaintiffs' Motion in Limine to Exclude Matthew Campbell and Alan Herbison from Defendant's Witness List* (Doc. 96), which is still pending, seeking in relevant part to exclude Campbell from testifying at trial. Campbell appears on the docket as an attorney of record for Plaintiffs, although he was not planning to attend the trial in person. Plaintiffs' counsel has indicated in the event the Court permits Campbell's testimony at trial, Campbell will travel to be present at trial, and Plaintiffs' attorneys will call Campbell as a witness, with Defendant's counsel having the opportunity to cross-examine him.

Additionally, for the Court's information, counsel for the parties are currently working on a stipulation of facts, to address some background facts in this case and streamline the trial. As of the submission of this memorandum, counsel for the parties are still working on this stipulation, but it will be submitted in advance of trial if the parties' attorneys reach agreement on a final stipulation.

V.      **Objections to Admissibility of Exhibits Identified in Plaintiffs' Exhibit List**

1.      **Pending Motion in Limine**

Defendant Howe has filed *Defendant's Motion in Limine* (Doc. 93), which is still pending, seeking to exclude all expert reports except when offered for non-hearsay purposes. This would exclude Exhibits **P001** (Expert Report of Dr. Loren Collingwood (Nov. 30, 2022)), **P002** (Declaration of Dr. Loren Collingwood (Nov. 30, 2022)), **P042** (Rebuttal Expert Report of Dr. Loren Collingwood (February 16, 2023)), **P064** (Expert Report of Dr. Daniel McCool (Nov. 30, 2022)), **P065** (Declaration of Dr. Daniel McCool (Nov. 30, 2022)), **P073** (Expert Report of Dr.

Weston McCool (Nov. 30, 2022)), **P074** (Declaration of Dr. Weston McCool (Nov. 30, 2022)), and **P081** (Expert Report of Dr. Hood III (Turtle Mountain v. Howe)).

It should be noted, Exhibits **P080** (Expert Report of Dr. M.V. Hood III (Walen v. Burgum)) and **D472** (Expert Report of Dr. Loren Collingwood in the Walen v. Burgum case) are expert reports from a different redistricting case in North Dakota (*Walen v. Burgum*, Civil No. 1:22-CV-00031), and both Plaintiffs and Defendant intend to rely on them for non-hearsay/rebuttal purposes at trial. These two reports would not be excluded even if the Court grants *Defendant's Motion in Limine* (Doc. 93) with respect to expert reports in this case.

It should further be noted, in order to account for the possibility that the Court may grant Defendant's request to exclude expert reports, the exhibit lists submitted by the parties include the various figures, tables, and images pulled from the expert reports and made into separate trial exhibits, to be used at trial during examination and cross examination of the experts (**D453 through D455**; **D468 through D471**; **P004 through P041**; **P043**, **P045 through P063**; **P067 through P070**; **P076 through P079**). So long as each expert testifies at trial as is currently expected, Defendant does not object to the use of these separate trial exhibits of the figures, tables, and images taken from the expert reports. So long as each expert testifies, Defendant also does not object to the introduction of the reliance materials of the experts, which are included in the parties' exhibit lists (**D456 through D467**; **D477 through D494**; **D496**; **D498 through D501**; **P044**; **P071**; **P084 through P096**; **P100 through P101**; **P103 through P112**; **P120 through P126**; **P128 through P132**). However, Defendant reserves the right to object to these exhibits in the event Plaintiffs do not call one or more of their experts to testify live at trial.

Even if the Court denies Defendant's request to exclude expert reports in whole, the pending *Defendant's Motion in Limine* (Doc. 93) also seeks an order from the Court excluding the portions of the expert reports of Dr. Loren Collingwood (**P001** and **P042**) relating to compactness and voting age population, which were formed by analyzing unreliable data using the unreliable software Dave's Redistricting App. The pending *Defendant's Motion in Limine* (Doc. 93) also

seeks an order from the Court excluding the portions of the expert report of Dr. Weston McCool (**P073**) relating to his opinion that systemic disparities hinder the ability of Native American tribal members to participate effectively in the North Dakota political process, as the opinion is a mere assumption, unsupported by any facts or data at all.  Additionally, the pending *Defendant's Motion in Limine* (Doc. 93) also seeks an order from the Court excluding the portions of the expert report of Dr. Weston McCool (**P073**) relating to his opinion that Native Americans have less access to healthcare due to the cost, which was formed based on unreliable Kaiser Family Foundation data.

  2. **Recently Generated Reports**

Defendant intends to object to the introduction of Exhibits **P113 through P119**, **P127**, and **P141 through P145**, which are reports and maps generated by the Maptitude redistricting software.  None of these reports or maps were disclosed in discovery, and it is Defendant's understanding all of them were first generated very recently in May of 2023.  The recently generated reports and maps relate to newly conducted analysis by Plaintiffs' expert Dr. Loren Collingwood (*see Declaration of Dr. Loren Collingwood*, Doc. 98-4), conducted well after all expert disclosure and deposition deadlines. Dr. Collingwood has already submitted two expert reports in this case; there is no justification for his continued analysis and generation of exhibits that Defendant's counsel had no opportunity to depose him regarding.

  3. **Briefs from Another Case**

Defendant intends to object to the introduction of **P098** (Secretary of State's Memorandum in Support of Motion for Summary Judgment, Walen v. Burgum) and **P099** (Secretary of State's Reply in Support of Motion for Summary Judgment, Walen v. Burgum).  These two exhibits are legal briefs submitted in support of a summary judgment motion in another ongoing redistricting case in the United States District Court for the District of North Dakota (*Walen v. Burgum*, Civil No. 1:22-CV-00031).  The briefs were signed and submitted to the Court in that case by attorney Bradley N. Wiederholt, one of the trial attorneys in the present case.  While Defendant Howe is cognizant of the Court's strong encouragement for counsel to agree as to foundation for exhibits

(*see Order for Final Pretrial Conference and Order Setting Trial Preparation Deadlines*; Doc. 34 at p. 3), Defendant Howe must assert a foundation objection to these two briefs. The briefs were written and submitted to the Court in a different lawsuit by a trial attorney in the present case. Defendant Howe's counsel does not believe any of the witnesses on *Plaintiffs' Witness List* (Doc. 103-1) could provide foundation for the briefs. Additionally, neither Defendant Howe, nor any other State representative on the parties' witness lists wrote, signed, or filed the briefs. Further, Plaintiffs' and Defendant's experts in this case have never expressed any opinions regarding the briefs. In addition to there being no foundation to introduce the briefs, the briefs are irrelevant under Federal Rule of Evidence 402, as they are legal arguments made in a different lawsuit involving District 4, which is not at issue in the present lawsuit. Further, introduction of legal briefs from another lawsuit involving other districts would be a waste of time at trial under Federal Rule of Evidence 403.

Dated this 5th day of June, 2023.

By: */s/ David R. Phillips*
David R. Phillips
Special Assistant Attorney General
ND Bar # 06116
300 West Century Avenue
P.O. Box 4247
Bismarck, ND 58502-4247
(701) 751-8188
dphillips@bgwattorneys.com

Attorney for Defendant Michael Howe, in his official capacity as Secretary of State of North Dakota

**CERTIFICATE OF SERVICE**

I hereby certify that on June 5, 2023, a true and correct copy of the foregoing **DEFENDANT MICHAEL HOWE'S TRIAL MEMORANDUM** was emailed to the following:

Michael S. Carter
OK No. 31961
Matthew Campbell
NM No. 138207, CO No. 40808
Native American Rights Fund

1506 Broadway
Boulder, CO 80301
carter@narf.org
mcampbell@narf.org

Molly E. Danahy
DC Bar No. 1643411
Campaign Legal Center
1101 14th St. NW, Ste. 400
Washington, DC 20005
mdanahy@campaignlegal.org

Mark P. Gaber
DC Bar No. 98807
Campaign Legal Center
1101 14th St. NW, Ste. 400
Washington, DC 20005
mgaber@campaignlegal.org

Bryan L. Sells
GA No. 635562
The Law Office of Bryan L. Sells, LLC
PO BOX 5493
Atlanta, GA 31107-0493
bryan@bryansellslaw.com

Nicole Hanson
N.Y. Bar No. 5992326
Campaign Legal Center
1101 14th St. NW, Ste. 400
Washington, DC 20005
nhansen@campaignlegalcenter.org

Samantha Blencke Kelty
AZ No. 024110
TX No. 24085074
Native American Rights Fund
1514 P Street NW, Suite D
Washington, DC 20005
kelty@narf.org

Timothy Q. Purdon
ND No. 05392
ROBINS KAPLAN LLP
1207 West Divide Avenue, Suite 200
Bismarck, ND 58501
TPurdon@RobinsKaplan.com

By: */s/ David R. Phillips*
DAVID R. PHILLIPS