# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA
# EASTERN DIVISION

| | |
|---|---|
| Turtle Mountain Band of Chippewa Indians, et al., | )<br>)<br>) |
| Plaintiff, | ) **OMNIBUS ORDER ON**<br>) **MOTIONS IN LIMINE**<br>) |
| vs. | )<br>) Case No. 3:22-cv-22 |
| Michael Howe, in his Official Capacity as Secretary of State of North Dakota, et al., | )<br>)<br>) |
| Defendant. | ) |

## I.      BACKGROUND

On November 10, 2021, the Legislative Assembly passed House Bill 1504, which provided for a redistricting of North Dakota's legislative districts. H.B. 1504, 67th Leg., Spec. Sess. (N.D. 2021). The Bill was signed into law by Governor Burgum on November 11, 2021. Id.

In this action, the Plaintiffs Turtle Mountain Band of Chippewa Indians ("Turtle Mountain"), Spirit Lake Tribe ("Spirit Lake"), Wesley Davis, Zachery S. King, and Collette Brown (together, the "Plaintiffs") challenge the above redistricting plan under Section 2 of the Voting Rights Act ("VRA") ("Section 2"), 52 U.S.C. § 10301. Doc. No. 1. The Plaintiffs allege that the redistricting plan dilutes the voting strength of Native Americans on the Turtle Mountain and Spirit Lake reservations, and in surrounding areas, in violation of Section 2 of the VRA. Id. at 29-31. Defendant Secretary of State of North Dakota Michael Howe (the "Secretary") generally denies these allegations. Doc. No. 31. The case is scheduled for trial beginning June 12, 2023.

On the May 12, 2023, the Secretary filed a motion in limine arguing the Court should exclude certain evidence and testimony. Doc. No. 93. The same day, the Plaintiffs filed a motion in limine seeking to prevent the Secretary from calling certain witnesses. Doc. No. 96. Each party

opposes the other's motion. Doc. Nos. 98, 99. For the reasons stated below, the Secretary's motion in limine (Doc. No. 93) is **DENIED**, and the Plaintiffs' motion in limine (Doc. No. 96) is **GRANTED** in part and **FOUND AS MOOT** in part.

## II.     THE SECRETARY'S MOTION IN LIMINE

The Secretary's motion in limine requests the Court exclude all expert reports except for non-hearsay purposes, exclude portions of the testimony and expert report of the Plaintiffs' expert Dr. Loren Collingwood, that were formed by analyzing data using the software Dave's Redistricting App, exclude certain testimony and evidence from the Plaintiffs' expert, Dr. Weston McCool, and exclude certain testimony from chair of the Spirit Lake Tribe, Lonna Jackson Street.

### A.     Exclusion of Expert Reports

The Secretary argues expert reports are inadmissible hearsay and do not fall under any recognized exceptions to the hearsay rule. Doc. No. 94 at 2. The Defendants argue the Court should admit the reports of experts who testify at trial under Federal Rule of Evidence 807.

Hearsay—an out of court statement offered in evidence to prove the truth of the matter asserted—is generally not admissible at trial. See Fed. R. Evid. 801, 802. Federal Rules of Evidence 803 and 804 contain exceptions to the evidentiary rule against hearsay, but none appear to apply here. Nevertheless, Federal Rule of Evidence 807 provides that a hearsay statement not specifically covered in Rules 803 and 804 is admissible after reasonable notice to the adverse party if "(1) the statement is supported by sufficient guarantees of trustworthiness—after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement; and (2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts." Fed. R. Evid. 807.

In Perez v. Texas, a three-judge court adjudicating claims challenging Texas's 2013 redistricting scheme ruled that expert reports were admissible under Rule 807 provided certain criteria were met. Case No. 11-CA-360-OLG-JES-XR (W.D. Tex. July 3, 2017) see also Doc. No. 98-2. The court concluded that the reports "will be allowed subject to any further objections in open court if the expert testifies live or by trial deposition and adopts the statements in the report while under oath and subject to cross examination." Doc. No. 98-2 at 3.

Here, the Court believes the expert reports are potentially admissible under Federal Rule of Evidence 807 as long as the author of any expert report lays proper foundation and is subject to cross examination. These are complex reports produced by qualified experts with years of experience. Should a party's expert testify their report is an accurate representation of their opinion and methods, the report enjoys a sufficient guarantee of trustworthiness for the Court to consider the report as evidence. Additionally, the United States Supreme Court has held there is a legitimate non-hearsay purpose in admitting expert reports because it "[illuminates] the expert's thought process." Williams v. Illinois, 567 U.S. 50, 78, (2012). Lastly, as noted in Perez, because this is a bench trial, the judge can properly assess the evidence and assign it the appropriate weight, relevance, and propriety in the Court's role as trier of fact. Doc. No. 98-2 at 3. Accordingly, the Court declines to hold that the expert reports are inadmissible hearsay and **DENIES** the Secretary's motion. However, nothing in this order precludes the Secretary from renewing this objection at trial should an expert report be offered.

 **B.** **Exclusion of Dr. Collingwood's Testimony and Evidence Related to Dave's Redistricting App**

The Secretary argues the Court should exclude portions of the testimony and expert report of Dr. Loren Collingwood relating to compactness and voting age population, that were formed by

3

analyzing data using the software Dave's Redistricting App. Doc. No. 94 at 3. The Secretary suggests that Dave's Redistricting App is unreliable and that any conclusions reached using this data should be inadmissible. The Plaintiffs oppose the motion.

Federal Rule of Evidence 702 governs admissibility of expert testimony. See Fed. R. Evid. 702. "Rule 702 reflects an attempt to liberalize the rules governing the admission of expert testimony." Weisgram v. Marley Co., 169 F.3d 514, 523 (8th Cir.1999); see also Daubert v. Merrell Dow Pharm., 509 U.S. 579 at 588 (1993). The rule clearly "is one of admissibility rather than exclusion." Arcoren v. United States, 929 F.2d 1235, 1239 (8th Cir.1991). "[W]here the court acts as a trier of facts it has broad discretion in the admission or exclusion of expert evidence." Waste Management, Inc. v. Deffenbaugh, 534 F.2d 126, 129-30 (8th Cir. 1976).

In Daubert, the U.S. Supreme Court emphasized the district court's gatekeeper role when screening expert testimony for relevance and reliability. Daubert provides a number of nonexclusive factors a court can apply in performing this gatekeeping role:

(1) whether the theory or technique can be (and has been) tested;

(2) whether the theory or technique has been subjected to peer review and publication;

(3) the known or potential rate of error; and

(4) whether the theory has been generally accepted.

Peitzmeier v. Hennessy Indus., Inc., 97 F.3d 293, 297 (8th Cir.1996) (citing Daubert, 509 U.S. at 593-94). Importantly, "Daubert is meant to protect juries from being swayed by dubious scientific testimony. When the district court sits as the finder of fact, [t]here is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself. Thus, we relax Daubert's application for bench trials." David E. Watson, P.C. v. United States, 668 F.3d 1008, 1015 (8th Cir. 2012) (cleaned up).

The Secretary cites to Ohio Org. Collaborative as supporting the proposition that Dave's Redistricting App is too unreliable to be used in federal court. 2016 WL 8201848, *8 (S.D. Ohio May 24, 2016). However, this case is easily distinguished. In Ohio Org. Collaborative, the district court declined to consider maps created with Dave's Redistricting App that showed the location of polling stations in relation to minority populations because the expert "[failed] to establish the parameters he used to produce the maps." Id. at *8. This was not an example of the application being unreliable as the Secretary suggests. Instead, Ohio Org. Collaborative concerned a problem with the explanation of how the maps at issue were created.

Here, the Court has reviewed each parties' filings and cannot conclude that opinions reached through the use of Dave's Redistricting App must be held as inadmissible. The Court views any issues with methodology or data collection as going to the weight of the evidence and not preventing admissibility—particularly in a bench trial such as this. Accordingly, the Secretary's motion is **DENIED** to the extent it seeks to exclude portions of the testimony and expert report of Dr. Loren Collingwood relating to compactness and voting age population formed by analyzing data using Dave's Redistricting App.

### C. Exclusion of Certain Testimony and Evidence from Dr. McCool

The Secretary argues the Court should exclude portions of the testimony and expert report of Dr. Weston McCool relating to his conclusion that systemic disparities hinder the ability of tribal members to participate effectively in the North Dakota political process and that Native Americans have less access to healthcare than white North Dakotans. Doc. No. 94 at 6-12. The Plaintiffs oppose the motion.

Dr. McCool's expert opinion is that systemic disparities hinder the ability of tribal members to participate effectively in the North Dakota political process. Doc. No. 98 at 13. The

5

Secretary suggests this is an unsupported assertion because Dr. McCool has not tied any of these disparities to the tribal members' ability to participate in the political process. The Eighth Circuit has held, "[o]nce lower socio-economic status of [the minority group] has been shown, there is no need to show the causal link of this lower status on political participation." Whitfield v. Democratic Party of State of Ark., 890 F.2d 1423, 1431 (8th Cir. 1989). Accordingly, the Court **DENIES** the Secretary's motion to the extent it seeks to prevent Dr. McCool from testifying that systemic disparities hinder the ability of tribal members to participate effectively in the North Dakota political process. However, nothing in this order prevents the Secretary from challenging the methodology and ultimate conclusions of Dr. McCool.

The Secretary also argues the Court should not consider Dr. McCool's opinion that Native Americans avoid health care due to the cost, at a higher rate than whites. Doc. No. 94 at 9. Dr. McCool relied on the Kaiser Family Foundation's State Health Facts Report with respect to his above-stated opinion. Doc. No. 98 at 14. This is statewide data and not specific to the district(s) relevant here. The Secretary also claims Dr. McCool's lack of familiarity with Kaiser Family Foundation data makes his opinion unreliable.

As an initial matter, the fifth Senate Factor[1] provides that courts should consider the following when addressing whether the totality of the circumstances indicate members of the racial minority group have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice:

---

[1] If the Gingles preconditions are each established, the Court then assesses whether, under the totality of the circumstances, members of the racial minority group have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice. 52 U.S.C. § 10301(b). The Senate factors are considered as part of the totality of the circumstances.

> the extent to which members of the minority group in the <u>state</u> or political subdivision bear the effects of discrimination in such areas as education, employment and health, which hinder their ability to participate effectively in the political process;

S.R. No. 97-417 at 28-29 (1982) (emphasis added). A plain reading of the fifth Senate Factor contradicts the Secretary's position. To the extent the Secretary seeks to exclude statewide data, the motion is **DENIED**. However, again, nothing in this order prevents the Secretary from challenging the methodology and ultimate conclusions of Dr. McCool.

The Secretary also argues that Dr. McCool's lack of familiarity with Kaiser Family Foundation data requires the Court find his opinion based on this data to be inadmissible. Doc. No 94 at 10-11. The Court notes that Kaiser Family Foundation data has been used in many federal decisions. <u>See, e.g.</u>, <u>Burwell v. Hobby Lobby Stores, Inc.</u>, 573 U.S. 682, 699 (2014); <u>LittleSisters of the Poor Saints Peter & Paul Home v. Pennsylvania</u>, 140 S. Ct. 2367, 2393 (2020). If Dr. McCool is lacking familiarity with how the data is collected as the Secretary suggests, this can be addressed during cross-examination. The Court views Dr. McCool's alleged unfamiliarity with the data as a matter of how much weight to give the evidence and not a bar to admissibility. Accordingly, the Motion is **DENIED** to the extent it seeks to bar the admissibility of Dr. McCool's opinions based on Kaiser Family Foundation data. Again, nothing in this order prevents the Secretary from challenging the methodology and ultimate conclusions of Dr. McCool.

### D.  Exclusion of Certain Testimony from Lonna Jackson Street

The Secretary argues the Court should exclude portions of potential testimony from Lonna Jackson Street. Doc. No. 94 at 12. Specifically, the Secretary seeks to exclude testimony from Ms. Jackson Street regarding topics outside the scope of Plaintiffs' initial disclosures. The Plaintiffs oppose the motion.

In their initial disclosures, the Plaintiffs disclosed then-chair of the Spirit Lake Tribe Douglas Yankton as having information concerning "[t]he injury the Spirit Lake Tribe and its members have suffered by the State's use of a redistricting plan that dilutes their vote." The Plaintiffs' most recent disclosure listed Lonna Jackson Street—newly elected chair of the Spirit Lake Tribe. Ms. Jackson Street's disclosure states that she "has information regarding the Tribe, its voters and local election conditions, and the needs and interests of the Tribe and Tribal residents with respect to the state legislature." The Secretary does not object to Ms. Jackson Street testifying. However, the Secretary claims Ms. Jackson Street should only be allowed to testify as to the injury the Spirit Lake Tribe and its members have suffered from the dilutive redistricting plan and not to information regarding the Tribe, its voters and local election conditions, and the needs and interests of the Tribe and Tribal residents with respect to the state legislature.

Rule 26 of the Federal Rules of Civil Procedure governs the scope of discovery. See Fed. R. Civ. P. 26. Under Rule 26(a)(1)(A)(i), a party to a litigation must provide other parties "the name, and if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment[.]" Fed. R. Civ. P. 26(a)(1)(A)(i). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Nevertheless, in these instances, the Eighth Circuit has stated "the district court has wide discretion to fashion a remedy or sanction as appropriate for the particular circumstances of the case." Wegener v. Johnson, 527 F.3d 687, 691-92 (8th Cir. 2008).

The Court views the most recent disclosure as a description of the ways the current electoral map is alleged to have harmed the Spirt Lake Tribe. Essentially, the most recent disclosure is just a more specific version of what was initially disclosed—the injury suffered by the Spirt Lake Tribe. This is not a violation of Rule 26. Even assuming *arguendo* that the Plaintiffs had violated Rule 26, it is difficult to fathom how this disclosure with more specificity would harm the Secretary. See Transamerica Life Ins. Co. v. Lincoln Nat. Life Ins. Co., 255 F.R.D. 645, 656 (N.D. Iowa 2009); United States v. Hawley, 562 F. Supp. 2d 1017, 1030 (N.D. Iowa 2008). Further, as noted by the Eighth Circuit, exclusion of evidence "is a harsh penalty and should be used sparingly." ELCA Enters. v. Sisco Equip. Rental & Sales, 53 F.3d 186, 190 (8th Cir. 1995). Even if the Court viewed the disclosure as a technical violation, exclusion would not be the appropriate remedy. Accordingly, to the extent the motion seeks to limit the testimony of Lonna Jackson Street, the motion is **DENIED**. Nothing in this order forecloses the Secretary from objecting at trial should Ms. Jackson Street's testimony go beyond the scope of the Plaintiffs' disclosure.

## III.   THE PLAINTIFFS' MOTIONS IN LIMINE

The Plaintiffs' motion in limine seeks to prevent the Secretary from calling Alan Herbison and Mathew Campbell as witnesses. The Secretary informs the Court he does not intend to call Herbison as a witness. The Secretary opposes the motion to the extent the Plaintiffs seek to prevent him from calling Campbell as a witness.

### A.   Exclusion of Alan Herbison as a Witness

Allan Herbison does not appear on the Secretary's witness list. Accordingly, the Court **FINDS AS MOOT** the motion, to the extent it seeks to prevent the Secretary from calling Herbison to testify in his case in chief.

### B.     Exclusion of Matthew Campbell as a Witness

Matthew Campbell is an attorney of record for the Plaintiffs. Campbell is also employed by the Native American Rights Fund, a non-profit 501c(3) organization which provided lobbying services for the Spirit Lake Tribe and Standing Rock Sioux Tribe during legislative redistricting process at issue in this case. The Secretary seeks to call Campbell to testify at trial regarding his testimony at the September 15, 2021 meeting of the Redistricting Committee. In the interest of brevity, and for the purposes of this order only, the Court will summarize Campbell's testimony as generally being in favor of the creation of subdistricts. See Doc. 74-2. The Plaintiffs concede this, and also concede that Campbell did not supplement his testimony following the release of user-friendly census data. The Plaintiffs seek to prohibit the Secretary from calling Campbell as a witness and the Secretary opposes the motion.

The Eighth Circuit has stated the following regarding the deposition of opposing counsel: "We view the increasing practice of taking opposing counsel's deposition as a negative development in the area of litigation, and one that should be employed only in limited circumstances." Shelton v. Am. Motors Corp., 805 F.2d 1323, 1327 (8th Cir. 1986). While Shelton concerns deposing opposing counsel and not testimony at trial, the Court finds this decision helpful in determining when compelling testimony of opposing counsel is appropriate. The Court sees no reason why the standard for compelling opposing to counsel to testify at trial would be lower than the standard required to depose said counsel. And, in any event, the Secretary has provided no authority suggesting a different standard is appropriate.

In Shelton the Eighth Circuit held that three elements must be satisfied to compel opposing counsel's testimony: (1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and  (3) the information is

crucial to the preparation of the case. Id. (cleaned up). The Plaintiffs claim the Secretary cannot satisfy this test.

### 1. No other means exist to obtain the information

The Secretary provides the following concerning Campbell's potential trial testimony:

> Defendant seeks to call Campbell as a witness at trial to establish the Redistricting Committee did listen to Tribal representatives and lobbyists who presented testimony, creating subdistricts where possible, as requested. Campbell failed to timely change his request of the Redistricting Committee.

Doc. No. 99 at 11. The record reflects that the Secretary is in possession of a transcript of Campbell's testimony. The Plaintiffs do not dispute that that Campbell offered this testimony to the Redistricting Committee on September 15, 2021. Nor is there any dispute that Campbell testified that Spirit Lake and Standing Rock were interested in subdistricts for their communities. Finally, there is no dispute that Mr. Campbell did not update his testimony at any point following the September 15 hearing, whether in person or in writing. In fact, the Plaintiffs are willing to stipulate to this fact. Doc. No 101 at 4. Here, the Court cannot conclude that no other means exists to obtain the information at issue because the Plaintiffs have verified this information on the record. As such, it is unnecessary to compel the testimony of opposing counsel to establish facts already in the record.

### 2. The information is crucial to the preparation of the case

The Secretary suggests Campbell's trial testimony is crucial to the preparation of the case because responsiveness from elected officials to the needs of the minority group is relevant in VRA cases. While responsiveness to the needs of minority groups can be relevant, it is difficult to view responsiveness as crucial here. Congress amended the VRA in 1982 "to make clear that proof of discriminatory intent is not required to establish a violation of Section 2." S. Rep. No. 97-417,

at 2 (1982). Instead, Congress adopted the results-based paradigm, which requires that "[n]o voting qualification . . . or procedure shall be imposed or applied by any State or political subdivision in a manner which <u>results</u> in a denial or abridgment of the right of any citizen . . . to vote on account of race or color." 42 U.S.C. § 1973(a) (2006) (emphasis added). In sum, while responsiveness can be considered as part of the totality of the circumstances in a Section 2 claim, the focus should be on the effect of the legislature's electoral map and not whether they were or were not responsive to certain requests from minority groups. Accordingly, the Court cannot view Campbell's testimony as crucial to the preparation of the Secretary's case[2] and the Plaintiffs' motion is **GRANTED**. The Secretary may not call Matthew Campbell to testify.

## IV.   <u>CONCLUSION</u>

The Court has reviewed the record, the parties' filings, and the relevant legal authority. For the reasons above, the Secretary's motion in limine (Doc. No. 93) is **DENIED**, and the Plaintiffs' motion in limine (Doc. No. 96) is **GRANTED** in part and **FOUND AS MOOT** in part. Nothing in this order limits either parties' ability to renew their objection(s) or object to the challenged evidence on other grounds at trial.

**IT IS SO ORDERED**.

Dated this 9th day of June, 2023.

*/s/ Peter D. Welte*
Peter D. Welte, Chief Judge
United States District Court

---

[2] It should also be noted that even if the Court had applied the less stringent test from <u>Pamida Inc. v. E.S. Originals</u>, Inc., for compelling opposing counsel's testimony, the Secretary would still fall short because the information is not "peculiarly within counsel's knowledge and centrally relevant to the issues" at stake. 281 F. 3d 726, 731 (8th Cir. 2002).