IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
EASTERN DIVISION

| | |
|---|---|
| Turtle Mountain Band of Chippewa Indians, Spirit Lake Tribe, Wesley Davis, Zachery S. King, and Collette Brown<br><br>Plaintiffs,<br><br>vs.<br><br>Michael Howe in his official capacity as Secretary of State of North Dakota,<br><br>Defendant. | Case No. 3:22-cv-00022<br><br><br><br>**REPLY BRIEF IN SUPPORT OF MOTION FOR STAY OF JUDGMENT PENDING APPEAL** |

Defendant Michael Howe in his official capacity as Secretary of State of North Dakota (the "Secretary") submits this brief in reply to *Plaintiff's Opposition to Defendant's Motion for Stay of Judgment Pending Appeal* (Doc. 142) and in support of the Secretary's *Motion for Stay of Judgment Pending Appeal* (Doc. 131).

(1) A *Purcell* Analysis is Appropriate.

Citing *Rose v. Raffensperger*, Plaintiffs argue that "when a district court relies upon a defendant's assertion of the date upon which the Section 2 remedial map must be finalized, the court of appeals cannot issue a stay based upon *Purcell*." Doc. 142 at 2 (citing *Rose*, 143 S. Ct. 58 (2022)). But *Rose* is distinguishable from this case.

In *Rose*, unlike here, the Georgia Secretary of State's "motion for a stay pending appeal relied on the traditional stay factors … see *Nken v. Holder*, 556 U.S. 418 (2009)." 143 S.Ct. at 59. The Supreme Court held it was error that "the Eleventh Circuit failed to analyze the motion under that framework, instead applying a *Purcell* analysis." *Id*. The Supreme Court also indicated in *Rose* that the Georgia Secretary of State "could not fairly have advanced [the *Purcell* principle] himself

in light of his previous representations to the district court that the schedule … was sufficient to enable effectual relief as to the November elections should applicants win at trial." *Id.* Those aren't the facts of this case.

Unlike the Georgia Secretary in *Rose*, the North Dakota Secretary in this case has expressly raised the *Purcell* issue in his motion for a stay briefing. *See* Doc. 132 at pp. 3-22. Further, unlike the Georgia Secretary in *Rose*, Secretary Howe has not represented to the Court in this case that his "concerns are resolved if the Court grants Plaintiffs' pending motion to modify the remedial order in this case to ensure that a remedial plan is in place by December 31." *Cf.* Doc. 142 at 1-2. To the contrary, the Secretary has argued strenuously that the State has a sound appellate argument that Plaintiffs had no right to commence this lawsuit under either the Voting Rights Act ("VRA") or 42 U.S.C. § 1983, but that the timing of the Court's order has made it impossible for the State to receive meaningful appellate review before the State's 2024 election map must be fixed with finality. Doc. 132 at 6-12. Contrary to Plaintiffs' suggestion, the *Rose* case does not hold that the Secretary's right of appeal is immaterial to a *Purcell* analysis, and in fact this Court has recognized the exact opposite. *E.g., Walen v. Burgum*, 2022 WL 1688746, at *6 (D.N.D. May 26, 2022) (*Purcell* "direct[s] courts to weigh the opportunity for appellate review").

However, even if the Court does not apply *Purcell* and instead relies on a traditional stay analysis, the Secretary has explained why a stay should be granted even under a traditional stay analysis. *See* Doc. 132 at 22-25; *see also, e.g., Citizens for Resp. & Ethics in Washington v. Off. of Admin.*, 565 F. Supp. 2d 23, 25 n. 1 (D.D.C. 2008) (when considering a stay pending appeal, "courts often recast the likelihood of success factor as requiring only that the movant demonstrate a serious legal question on appeal where the balance of harms favors a stay.").

(2) The *Gonzaga* Framework Applies to Plaintiff's Section 1983 Claims.

Plaintiffs argue the Secretary is not likely to succeed in his appeal because the "Fourteenth and Fifteenth Amendment enforcement statutes – like Section 2 of the VRA – sit at the center of Congress's purpose in enacting § 1983" and "must be held enforceable by § 1983 absent an express indication that Congress chose otherwise." Doc. 142 at 9. Resting on that logic, Plaintiffs argue the *Gonzaga* framework for assessing Section 1983 claims is immaterial, and that is "universally accepted" that a statute like the VRA would be privately enforceable through Section 1983, regardless of whether the statute creates individual rights or private enforcement would be incompatible with the statutory enforcement scheme. Doc. 142 at 8-9.

Notably, Plaintiffs' brief doesn't cite any legal authority standing for this purportedly "universally accepted" proposition. No case cited by Plaintiffs holds in absolute terms that a statute like the VRA is enforceable under Section 1983 regardless of whether it creates individual rights and regardless of whether private enforcement would be incompatible with the statute's enforcement scheme. Instead of citing caselaw establishing a different framework, Plaintiff simply attacks the framework for assessing Section 1983 claims announced by the Supreme Court in *Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002), and similar cases, arguing that framework has no relevance because the underlying statutes in those cases were enacted pursuant to the Spending Clause. Doc. 142 at 7-10. However, the fact that Spending Clause statutes may have a heightened bar for finding a private right of action under Section 1983 does not mean that the *Gonzaga* framework for assessing Section 1983 claims—requiring that the statute create an individual right and not be incompatible with the statutory enforcement scheme—is inapplicable outside of the Spending Clause context. Indeed, this Court also relied on *Gonzaga* as the framework for its analysis of § 1983 in this case in its *Order Denying Motion to Dismiss. See* Doc. 30 at 8-9.

Plaintiffs essentially take the position that every civil rights statute contains a private right of action by way of Section 1983, even when the statute at issue does not create individual rights, and even where private enforcement is incompatible with the specific enforcement scheme laid out in the statute. But that cannot be correct, and borders on the absurd. The Court should reject Plaintiffs' argument and analyze the applicability of Section 1983 to this case according to the *Gonzaga* framework, as it already has done.

(3) Section 2 Does Not Create Individual Rights.

Plaintiffs argue Section 2 of the VRA conveys individual rights enforceable under Section 1983. Doc. 142 at 10-13. Plaintiffs note the Eighth Circuit recently suggested Section 2 appears to have both individual and group rights, and stated "'[i]t is unclear what to do when a statute focuses on both" individual rights and what "states and political subdivisions cannot do."'" Doc. 142 at 12 (citing *Arkansas State Conf. NAACP*, 2023 WL 8011300, at *4). Plaintiffs then incorrectly assert "the Supreme Court expressly answered that precise question in the context of § 1983 in [*Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166 (2023)]."

In *Talevski*, the Supreme Court stated, "it would be strange to hold that a statutory provision fails to secure rights simply because it considers, alongside the rights bearers, the actors that might threaten those rights (and we have never so held)." *Talevski*, 599 U.S. at 185. Plaintiffs claim *Talevski* is controlling in that regard. Doc. 142 at p. 12. However, Plaintiffs have completely missed the point of the Secretary's argument. As explained in the Secretary's Brief, while subsection (a) of Section 2 of the VRA may appear, on a glance, to describe an individual right (forbidding voting practices that "result[] in a denial or abridgement of the right of any citizen … to vote on account of race or color … as provided in subsection (b)), the 1982 addition of subsection (b) clarifies that subsection (a) is a group right. 52 U.S.C. 10301(a) and (b). Subsection

(b) provides "[a] violation of subsection (a) is established if … the political processes leading to nomination or election ... are not equally open to participation by ***members of a class of citizens*** protected by subsection (a) in that ***its members*** have less opportunity than other members of the electorate to participate in the political process … ." 52 U.S.C. 10301(b) (emphasis added). Section 2 does not contain both individual and aggregate rights.  Rather, subsection (b) clarifies that subsection (a) is an aggregate right.

Relatedly, Plaintiffs argue Section 2 does not create aggregate rights, citing *Shaw v. Hunt*, 517 U.S. 899, 917 (1996).  Doc. 142 at 14.  Plaintiffs note that in *Shaw*, "the Supreme Court rejected the argument that a Section 2 violation that is 'proved for a particular area' of a state could be remedied by drawing a minority opportunity district elsewhere in the state, because Section 2 creates individual, not group, rights." *Id.* Plaintiffs then incorrectly assert, "[t]hat suffices to defeat the Secretary's argument." *Id*. But Plaintiff's reliance on *Shaw* in that regard is misplaced.

*Shaw* addressed whether a state can treat all minorities in the state as interchangeable, by leaving the challenged minority-dilution area in place and creating a new minority-empowered area elsewhere in the State. The Court rejected such geographic interchangeability.  517 U.S. at 918.  Within a "particular area," however, the right against vote dilution still belongs to the members of the minority group in the aggregate, not to any specific individuals including the named plaintiffs, and it can only be understood in that context.  As indicated in the Secretary's Brief, the *Gingles* test is clear that Section 2 of the VRA deals with the right of minorities collectively in an area to elect their candidate of choice. Doc. 132 at 9. The candidate that any specific minority voter might wish to prevail in a given election is immaterial to a Section 2 dilution claim.  It doesn't matter for a Section 2 dilution claim what candidate any specific person may want –all that matters is the aggregate preference in the "particular area." *Id*.

(4) Private Enforcement Is Incompatible with the VRA's Enforcement Scheme.

Plaintiffs argue the Secretary has failed to show that private enforcement of Section 2 under through Section 1983 is incompatible with the VRA's enforcement scheme, claiming that is fatal to the Secretary's claim. Doc. 142 at 16 (citing *Talevski*, 599 U.S. at 188). However, the Eighth Circuit's recent decision in *Arkansas State Conf. NAACP v. Arkansas Bd. of Apportionment*—explicitly holding that Congress intended to place enforcement authority only with the Attorney General of the United States—does in fact establish private enforcement under § 1983 would be incompatible. *See* 2023 WL 8011300, at *5 (8th Cir. Nov. 20, 2023) ("[i]f the text and structure of § 2 and § 12 show anything, it is that 'Congress intended to place enforcement in the hands of the [Attorney General], rather than private parties.'" (citation omitted); *see also, e.g.*, *City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113, 122 (2005) (noting "ordinary inference that the remedy provided in the statute is exclusive," absent textual evidence it was intended "to complement, rather than supplant, § 1983").

Relatedly, Plaintiffs argue that 52 U.S.C. § 10310(e)'s fee-shifting for suits to enforce the Fourteenth and Fifteenth Amendments also supports applying Section 1983 to Section 2 of the VRA. Doc. 142 at p. 19. However, as the Secretary observed in his brief, VRA Section 2 dilution claims are not actions to enforce the Fourteenth and Fifteenth Amendments, but instead go beyond the rights provided by those provisions. Doc. 142 at 11-12. Plaintiffs' argument to the contrary runs headlong into the Eight Circuit's recent decision. *See Arkansas State Conf. NAACP*, 2023 WL 8011300, at *7 n.3 ("By focusing solely on the discriminatory impact [under Section 2], not intentional discrimination, the advocacy groups are not attempting to 'enforce the voting guarantees of the fourteenth or fifteenth amendment.'"); *see also, e.g., Allen v. Milligan*, 599 U.S. 1, 10-11 (2023) (explaining the current form of Section 2 was enacted in response to the Court's

holding that the Fifteenth Amendment only applies to discriminatory intent, not discriminatory effect). Perhaps for that reason, Plaintiffs back away from defending the Court's prior reasoning on this point. *See* Doc. 142 at 19 (noting "[t]he fee-shifting provision was a minor point in this Court's motion-to-dismiss order," and "this Court need not … rely upon § 10310(e) at this stage").

(5) The Public Interest Favors a Stay

Finally, Plaintiffs argue that the public interest would be served by invalidating the State's duly enacted redistricting plan prior to the State having a meaningful opportunity for appellate review. Doc. 23-24. This argument is mistaken. "[T]he public has a strong interest in the appeal right as one component of the constitutional right to due process in enforcement of the nation's laws." *Toomey v. Arizona*, 2021 WL 4915370, *3 (D. Ariz. Oct. 21, 2021) (citation omitted). That is especially true where, as here, a federal court's imposition of its own redistricting plan "represents a serious intrusion on the most vital of local functions." *Miller v. Johnson*, 515 U.S. 900, 915 (1995) (citation omitted).

A stay of this Court's judgment pending appeal would serve the public interest by allowing the Secretary to receive meaningful appellate review of this Court's judgment regarding Plaintiffs' private right of action, while also providing the State Legislative Assembly with a reasonable opportunity to enact a remedial plan for after the 2024 election cycle without unnecessary disruption and confusion for candidates, voters, and election administrators.

## CONCLUSION

For the reasons set forth above and set forth in the Secretary's Initial Brief (Doc. 132), the Secretary respectfully requests that the Court grant his motion for a stay of judgment pending appeal (Doc. 131). The Secretary respectfully requests the Court enter an order no later than **December 12, 2023**.

Dated this 11th day of December, 2023.

        State of North Dakota
        Drew H. Wrigley
        Attorney General

By:   */s/ David R. Phillips*
      David R. Phillips (ND Bar No. 06116)
      Special Assistant Attorney General
      dphillips@bgwattorneys.com
      300 West Century Avenue
      P.O. Box 4247
      Bismarck, ND 58502-4247
      Telephone: (701) 751-8188

      Philip Axt (ND Bar No. 09585)
      Solicitor General
      Email: pjaxt@nd.gov
      600 E. Boulevard Ave., Dept. 125
      Bismarck, ND 58505
      Telephone: (701) 328-2210

      Counsel for Defendant Michael Howe, in his official capacity as Secretary of State of North Dakota

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing **REPLY BRIEF IN SUPPORT OF MOTION FOR STAY OF JUDGMENT PENDING APPEAL** was on the 11th day of December, 2023, filed electronically with the Clerk of Court through ECF:

Michael S. Carter
OK No. 31961
Matthew Campbell
NM No. 138207, CO No. 40808
Native American Rights Fund
1506 Broadway
Boulder, CO 80301
carter@narf.org
mcampbell@narf.org

Molly E. Danahy
DC Bar No. 1643411
Campaign Legal Center
1101 14th St. NW, Ste. 400

Washington, DC 20005
mdanahy@campaignlegal.org

Mark P. Gaber
DC Bar No. 98807
Campaign Legal Center
1101 14th St. NW, Ste. 400
Washington, DC 20005
mgaber@campaignlegal.org

Bryan L. Sells
GA No. 635562
The Law Office of Bryan L. Sells, LLC
PO BOX 5493
Atlanta, GA 31107-0493
bryan@bryansellslaw.com

Samantha Blencke Kelty
AZ No. 024110
TX No. 24085074
Native American Rights Fund
1514 P Street NW, Suite D
Washington, DC 20005
kelty@narf.org

Timothy Q. Purdon
ND No. 05392
ROBINS KAPLAN LLP
1207 West Divide Avenue, Suite 200
Bismarck, ND 58501
TPurdon@RobinsKaplan.com

Allison Neswood
Native American Rights Fund
250 Arapahoe Ave
Boulder, CO 80302
202-734-6449
neswood@narf.org

Phil Axt
Office of Attorney General
600 E. Boulevard Avenue, Dept. 125
Bismarck, ND 58502
pjaxt@nd.gov

Scott K. Porsborg

Austin T. Lafferty
Brian D. Schmidt
Smith Porsborg Schweigert Armstrong Moldenhauer & Smith
122 E. Broadway Avenue
P.O. Box 460
Bismarck, ND 58502-0460
701-258-0630
sporsborg@smithporsborg.com
alafferty@smithporsborg.com
bschmidt@smithporsborg.com

Victor J. Williamson
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Room 7263 NWB
Washington, DC 20530
202-305-0036
victor.williamson@usdoj.gov

By: */s/ David R. Phillips*
DAVID R. PHILLIPS