IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

Case No: 3:22-cv-00022

Turtle Mountain Band of Chippewa )
Indians, Spirit Lake Tribe, Wesley Davis, )
Zachary S. King, and Collette Brown. )
)
                   Plaintiffs, )
)
v. )
)
Michael Howe, in his official capacity as )
Secretary of State of North Dakota. )
)
                   Defendant )

**NORTH DAKOTA LEGISLATIVE ASSEMBLY'S BRIEF IN REPLY TO MOTION FOR STAY OF JUDGMENT PENDING APPEAL**

\*\*\*      \*\*\*      \*\*\*

## I. INTRODUCTION

The North Dakota Legislative Assembly ("Assembly") submits this brief in reply to Plaintiffs' Opposition to Defendant's Motion for Stay of Judgment Pending Appeal (Doc. 142) to protect its constitutional redistricting interests as recognized by the Supreme Court[1]. The Plaintiffs' attempt to fast-track a judicially imposed map on the people of North Dakota is a direct attack on the Assembly's interest and the will of the people. The Plaintiffs' proposal is the exact situation *Purcell* is designed to prevent. In reality, the tides have shifted dramatically since the Eighth Circuit's November 20, 2023 decision in Arkansas State Conf. NAACP v. Arkansas Bd. of Apportionment, - F.4th-, 2023 WL 8011300 (8th Cir. Nov. 20, 2023). Presumably, Plaintiffs now realize this and scramble to impose their map before the Eighth Circuit dismisses their case with prejudice under its rationale in Arkansas State Conf. NAACP.

---

[1] The Assembly filed a joinder in the Secretary's Motion for a Stay. (Doc. 138).

The Secretary correctly contends the *Purcell* principle should control this motion. In fact, Justice Kavanaugh explained the *Purcell* principle is specifically designed to protect candidates, state and local officials, and voters from the "chaos and confusion" in this situation. Merrill v. Milligan, 142 S. Ct. 879, 881 (2022) (J. Kavanaugh Concurrence). This is especially true where "our long-deplorable vote-dilution jurisprudence…has spawned intractable difficulties of definition and application." Allen v. Milligan, 599 U.S. 1, 90 (2023) (J. Thomas dissent). After attempting to apply this "long-deplorable vote-dilution jurisprudence," this Court found the Assembly's efforts "did not go far enough to comply with Section 2." See Id.; Doc. 125 at p. 38. The Assembly disagrees with this Court's assessment, but nonetheless has taken steps to gather additional input from an expert and others to prepare a remedial plan pending appeal.

Even though the Assembly's guideposts are "notoriously unclear and confusing" and "there is considerable disagreement and uncertainty regarding the nature and contours of a vote dilution claim," it has no reasonable opportunity to develop a remedial plan if a stay is not granted. Merrill, 142 S. Ct. at 880 (J. Kavanaugh Concurrence) (emphasis added). The Supreme Court has repeatedly cautioned federal courts to make every effort to avoid this situation. Wise v. Lipscomb, 437 U.S. 535, 539 (1978). This Court should follow precedent and do the same.

**II.   ARGUMENT**

The Assembly must be allowed an opportunity to protect its paramount "retained sovereign…power to enact…any laws that do not conflict with federal law." Cameron v. EMW Women's Surgical Center, P.S.C., 595 U.S. 267, 277 (2022). While this Court held the Assembly carefully examined the VRA and believed its enactment of N.D.C.C. § 54-03-01.14 "would comply with the VRA" it concluded "those efforts did not go far enough to comply with Section

2." Doc. 125 at p. 38. The Assembly certainly disagrees with this conclusion and will seek appellate review of this determination[2].

A stay is justified under either *Purcell* or traditional stay analysis. In light of the Eighth Circuit's recent holding in <u>Arkansas State Conf. NAACP</u>, there is a substantial likelihood the Judgment will be overturned on appeal because the Plaintiffs lack a private right of action to assert a vote dilution claim arising under § 2 of the VRA.

### A. The Stay Must be Granted under Any Applicable Standard.

As the Secretary noted, "the *Purcell* principle is probably best understood as a sensible refinement of ordinary stay principles for the election context—a principle that is not absolute but instead simply heightens the showing necessary for a plaintiff to overcome the State's extraordinarily strong interest in avoiding late, judicially imposed changes to its election laws and procedures." <u>Merrill</u>, 142 S. Ct. at 881 (J. Kavanaugh Concurrence). The rationale for this principle is as follows:

> That principle—known as the *Purcell* principle—reflects a bedrock tenet of election law: When an election is close at hand, the rules of the road must be clear and settled. <u>Late judicial tinkering with election laws can lead to disruption and to unanticipated and unfair consequences for candidates, political parties, and voters, among others</u>. It is one thing for a State on its own to toy with its election laws close to a State's elections. <u>But it is quite another thing for a federal court to swoop in and re-do a State's election laws in the period close to an election</u>.

<u>Id.</u> at 880-81 (emphasis added).

---

[2] Plaintiffs assert "the Secretary has waived any argument that he is likely to succeed on the merits of Plaintiffs' Section 2 claim – his motion is based solely on § 1983." Doc. 142 at p.2. The Assembly does not agree with this statement as the merits were vehemently contested throughout trial. The Assembly contests the Court's application of *Gingles* and asserts the Plaintiffs failed to meet their burden of proof. <u>See</u> Doc. 138 at p. 8 at n. 5. The Assembly preserves its right to contest the merits on appeal.

This is especially applicable here as Plaintiffs impermissibly seek to impose a redistricting map on the people of North Dakota no later than December 22, 2023, by judicial order. See Doc. 134 at pp. 2-3. The Secretary correctly points out North Dakota law prohibits a board of county commissioners from establishing voting precincts "later than December thirty-first of the year immediately preceding an election cycle...." N.D.C.C. § 16.1-04-01. Further, candidates must circulate and gather all nomination petitions between January 1 and April 8, 2024, for the 2024 election. N.D.C.C. § 16.1-11-15. These are important dates as candidates for a legislative office must not only reside in the district they seek to represent, but must obtain "the signatures of at least one percent of the total resident population of the legislative district as determined by the most recent federal decennial census." N.D. Const. Art. IV § 5; N.D.C.C. § 16.1-11-06(1)(b)(3)(d). These requirements must be considered in the Court's analysis. In fact, Justice Kavanaugh noted these exact concerns justify a stay as follows:

> With respect to the request for a stay of the District Court's injunction for the 2022 elections, the State argues that the District Court's injunction is a prescription for chaos for candidates, campaign organizations, independent groups, political parties, and voters, among others...<u>Filing deadlines need to be met, but candidates cannot be sure what district they need to file for. Indeed, at this point, some potential candidates do not even know which district they live in. Nor do incumbents know if they now might be running against other incumbents in the upcoming primaries.</u>
>
> On top of that, <u>state and local election officials need substantial time to plan for elections.</u> Running elections state-wide is extraordinarily complicated and difficult. Those elections require enormous advance preparations by state and local officials, and pose significant logistical challenges. <u>The District Court's order would require heroic efforts by those state and local authorities in the next few weeks—and even heroic efforts likely would not be enough to avoid chaos and confusion.</u>

Merrill, 142 S. Ct. at 880 (J. Kavanaugh Concurrence) (emphasis added).

Imposition of a map - by judicial fiat - upon the state electorate immediately before these deadlines will cause the substantial chaos and confusion *Purcell* is designed to prevent.

Moreover, if this Court denies a stay and imposes a judicially crafted map at the eleventh hour, it is not only likely – but probable – the Eighth Circuit will reverse this Court's Judgment in light of Arkansas State Conf. NAACP. If this Court follows the Plaintiffs' suggestions and the Eighth Circuit predictably reverses this Court's Judgment, chaos and confusion are imminent. County commissions, election officials, potential candidates, and the public will be left to wonder if they are to follow the map imposed by the federal judiciary or the one their elected officials enacted through the normal legislative process. This situation must be avoided.

This is why the *Purcell* principle provides a stay is appropriate unless "the underlying merits are entirely clearcut in favor of the plaintiff." Id. at 881. Here, this Court acknowledged this standard cannot be met. See Doc. 125 at p. 38. It is nearly impossible for a legislative body to accurately predict how one district court judge will apply the *Gingles* preconditions and "totality of circumstances" test to facts undeveloped until litigation[3]. See Merrill, 142 S. Ct. at 880 (J. Kavanaugh Concurrence) (explaining "there is considerable disagreement and uncertainty regarding...a vote dilution claim"); see also Allen, 599 U.S. 1, 90 (2023) (J. Thomas Dissent) (explaining "our long-deplorable vote-dilution jurisprudence...has spawned intractable difficulties of definition and application.") This is especially true here where the Plaintiffs' map - they assert should be imposed on the people of North Dakota - was not presented until mere hours before the Assembly voted to pass N.D.C.C. § 54-03-01.14. If the Court denies a stay, the Assembly will be deprived of a reasonable opportunity to carry out its constitutional duty on behalf of the people of North Dakota because it failed to predict the results of "uncertain" and "long-deplorable vote-dilution jurisprudence." This cannot be the result.

---

[3] Even after undertaking substantial evaluation, this Court concluded this case presented a close call. Doc. 125 at p. 38.

However, whether this Court applies *Purcell* or the traditional stay analysis, the Eighth Circuit's decision in Arkansas State Conf. NAACP demands this Court grant a stay. As this Court is well-aware, the Eighth Circuit analyzed the text of § 2 of the VRA in detail and concluded "there is no 'private remedy' to enforce § 2...." Id. at *10. The Eighth Circuit explained its rationale for reaching this conclusion as follows:

> The dissent is right that "this case presents two paths," *post* at 1223–24, but our view of them is a little different. The first is to follow what other courts have done: turn an assumption into a holding and conclude that a private right of action exists under § 2. The second is to figure out the right answer ourselves: start with the text, apply first principles, and use the interpretive tools the Supreme Court has provided. For us, the choice is clear. *See Bolden*, 446 U.S. at 60 & n.8, 100 S.Ct. 1519 (plurality opinion) (suggesting early on that it was questionable whether § 2 authorized private enforcement).

Id. at *10 n. 7 (emphasis added).

In figuring out the "right answer," the Eighth Circuit acknowledged the plaintiffs requested to amend their pleadings to assert a vote dilution claim arising under 42 U.S.C. § 1983. Id. at *12. After noting pleading failures are "occasionally excused," the Eighth Circuit modified the district court's judgment and dismissed the case "with prejudice." Id. Had the Eighth Circuit believed 42 U.S.C. § 1983 presented plaintiffs an avenue to vindicate their rights under § 2 of the VRA, it would not have done so. See Universal Title Ins. Co. v. U.S., 942 F.2d 1311, 1314-15 (8th Cir. 1991) (explaining the Eighth Circuit has "the discretion to consider an issue for the first time on appeal where the proper resolution is beyond any doubt, or where injustice might otherwise result, or when the argument involves a purely legal issue in which no additional evidence or argument would affect the outcome of the case.") (internal quotations omitted) (emphasis added). Dismissal with prejudice was clearly warranted as the Eighth Circuit explained:

>Congress not only created a method of enforcing § 2 that does not involve private parties, but it also allowed someone else to bring lawsuits in their place. <u>If the text and structure of § 2 and § 12 show anything, it is that "Congress intended to place enforcement in the hands of the [Attorney General], rather than private parties."</u>

Arkansas State Conference NAACP, -F.4th- 2023 WL 8011300 at *5 (emphasis added) (alteration in original) (citation omitted).

The Court further explained that "[i]f private plaintiffs have the same causes of action as the Attorney General, then the reverse is true too... As things stand now, the Attorney General cannot bring a § 1983 action on behalf of someone else." Id. at * 6. The only reasonable reading of Arkansas State Conference NAACP is that private parties cannot enforce § 2 of the VRA and 42 U.S.C. § 1983 certainly does not provide a vehicle to do so.

Regardless of whether this Court applies *Purcell* or traditional stay analysis, a stay must be granted. From a practical standpoint, a stay eliminates the possibility that local officials, candidates, and the public will be subject to "chaos and confusion" with the imposition of a last-minute judicially imposed map. See Merrill, 142 S. Ct. at 880 (J. Kavanaugh Concurrence). Moreover, from a legal standpoint, the grant of a stay will maintain the long-standing precedent that redistricting "is a legislative task which federal courts should make every effort not to pre-empt." Wise, 437 U.S. at 539. This is especially true after the Eighth Circuit explained – without making an explicit holding - that 42 U.S.C. § 1983 cannot be used to enforce § 2 of the VRA. See Arkansas State Conference NAACP, 2023 WL 8011300 at *5-*12.

### III.   CONCLUSION

For the aforementioned reasons, a stay of judgment pending appeal must be granted.

Dated this 12th day of December, 2023.

        SMITH PORSBORG SCHWEIGERT
        ARMSTRONG MOLDENHAUER & SMITH

        By /s/ Scott K. Porsborg
            Scott K. Porsborg (ND Bar ID #04904)
            sporsborg@smithporsborg.com
            Brian D. Schmidt (ND Bar ID #07498)
            bschmidt@smithporsborg.com
            122 East Broadway Avenue
            P.O. Box 460
            Bismarck, ND 58502-0460
            (701) 258-0630

        Attorneys for North Dakota Legislative Assembly; Ray Holmberg, Nicole Poolman, Rich Wardner, Bill Devlin, Mike Nathe, Terry B. Jones, and Claire Ness

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of December, 2023, a true and correct copy of the foregoing **NORTH DAKOTA LEGISLATIVE ASSEMBLY'S BRIEF IN REPLY TO MOTION FOR STAY OF JUDMENT PENDING APPEAL** was filed electronically with the Clerk of Court through ECF, and that ECF will send a Notice of Electronic Filing (NEF) to the following:

**ATTORNEYS FOR PLAINTIFFS**

Michael S. Carter                  carter@narf.org
Matthew Campbell                mcampbell@narf.org
Attorneys At Law
1506 Broadway
Boulder, CO 80301

**ATTORNEYS FOR PLAINTIFFS**

Mark P. Garber                    mgaber@campaignlegal.org
Molley E. Danahy                mdanahy@campaignlegal.org
Attorneys At Law
1101 14th St. NW, Ste. 400
Washington, DC 20005

**ATTORNEY FOR PLAINTIFFS**

    Timothy Q Purdon                                  tpurdon@robinskaplan.com
    Attorney at Law
    1207 West Divide Avenue, Suite 200
    Bismarck, ND 58501

**ATTORNEY FOR PLAINTIFFS**

    Samantha B. Kelty                                 kelty@narf.org
    Attorney at Law
    1514 P St. NW, Suite D
    Washington, D.C. 20005

**ATTORNEY FOR PLAINTIFF**

    Bryan Sells                                            bryan@bryansellslaw.com
    Attorney at Law
    P.O. Box 5493
    Atlanta, GA 31107-0493

**ATTORNEYS FOR DEFENDANT MICHAEL HOWE**

    Matthew A Sagsveen                             masagsve@nd.gov
    Assistant Attorney General
    500 North 9th Street
    Bismarck, ND 58501-4509

    David R. Phillips                                   dphillips@bgwattorneys.com
    Bradley N. Wiederholt                       bwiederholt@bgwattorneys.com
    Special Assistant Attorney General
    300 West Century Avenue
    P.O. Box 4247
    Bismarck, ND 58502-4247

                                                                By /s/ Scott K. Porsborg
                                                                        SCOTT K. PORSBORG