IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| TURTLE MOUNTAIN BAND OF CHIPPEWA INDIANS, et al.,<br><br>        Plaintiffs,<br><br>  v.<br><br>MICHAEL HOWE, in his official capacity as Secretary of State of North Dakota, et al.,<br><br>        Defendant. | Civil No. 3:22-cv-00022-PDW-ARS |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR REMEDIAL ORDER**

  The Court provided the North Dakota Legislative Assembly ("the Assembly") 35 days—until today—to adopt and file with this Court a remedial map to correct the violation of Section 2 of the Voting Rights Act with respect to Districts 9, 9A, 9B, and 15. The Assembly has chosen not to adopt a map by the Court's deadline, and thus this Court is obligated to impose a remedial map. Plaintiffs respectfully move the Court for an order imposing Plaintiffs' Demonstrative Map 2 as the remedial map in this case. Plaintiffs also respectfully request that the Court do so by December 31, the date the Secretary has requested for a final map.

ARGUMENT

**I. The Court has jurisdiction to impose a remedial plan.**

  This Court has jurisdiction to impose a remedial plan notwithstanding the notice of appeal that was filed regarding the Court's liability ruling. On December 20, the Eighth Circuit confirmed as much, citing *Board of Education of St. Louis v. State of Missouri*, 936 F.2d 993, 995-96 (8th Cir. 1991), for the proposition that this Court retains jurisdiction to supervise the remedial process in this case. *See* Order, *Turtle Mountain Band of Chippewa Indians v. N.D. Leg. Assembly*, No.

1

23-3697 (Dec. 20, 2023). In *Board of Education of St. Louis*, the Eighth Circuit held that in cases such as this, where the district court supervises an "ongoing course of conduct," it retains jurisdiction to do so and to enter remedial injunctions—even where it "acts upon or modifies the order from which the appeal was taken." *Id.* (internal quotation marks and citation omitted). Moreover, the remedial map is not an aspect of the pending appeals. *See United States v. Queen*, 433 F.3d 1076, 1077 (8th Cir. 2006) ("[A] notice of appeal only divests the lower court of jurisdiction over aspects of the case that are the subject of the appeal."); *cf.* Fed. R. Civ. P. 62(d) (authorizing district court to "grant" an injunction "[w]hile an appeal is pending" on various terms). This is standard practice in redistricting litigation. *See, e.g.*, *Williams v. City of Texarkana*, 32 F.3d 1265, 1267 (8th Cir. 1994) (affirming district court's Section 2 liability determination and subsequent remedial order where remedial process occurred after filing of liability appeal); *Personhuballah v. Alcorn*, 155 F. Supp. 3d 552, 557 (E.D. V.A. 2016) (three-judge court) (rejecting argument that notice of appeal of liability determination divested district court of jurisdiction to impose remedial plan), *application for stay denied*, *Wittman v. Personhuballah*, 577 U.S. 1125 (2016) (Mem.).

The Eighth Circuit denied the Secretary's motion for a stay in this case and has confirmed this Court's jurisdiction to supervise and enforce remedial process notwithstanding the pending appeals. Indeed, because the current map is permanently enjoined, this Court must act to ensure that a map is in place before the 2024 elections. *See Wise v. Lipscomb*, 437 U.S. 535, 540 (1978) (holding that, after a violation is found, "[w]hen those with legislative responsibilities do not respond, or the imminence of a state election makes it impractical for them to do so, it becomes the unwelcome obligation of the federal courts" to devise a remedial map).

**II.     The Court should impose Plaintiffs' Demonstrative Map 2 as the remedial map.**

The Court should impose Plaintiffs' Demonstrative Map 2 as the remedial map. In the absence of a remedial plan proposed by the Assembly, this Court is empowered to adopt a plan proposed by Plaintiffs. In *Bone Shirt v. Hazeltine*, the district court provided the South Dakota legislature an opportunity to adopt a proposed remedial plan, but the legislature did not do so. 461 F.3d 1011, 1022 (8th Cir. 2006). In such a circumstance, the Eighth Circuit explained, "the district court [may] fashion its own remedy or, as here, adopt a remedial plan proposed by the plaintiffs." *Id.* at 1022.

Plaintiffs' Demonstrative Plan 2 remedies the Section 2 violation. Dr. Collingwood included a "performance analysis" in his expert report, Ex. P001 (Collingwood Initial Report) at 38-43, showing that District 9 in the plan would provide Native American voters an equal opportunity to elect their candidates of choice. Candidates preferred by Native American voters prevailed in 26 of 28 tested elections in proposed District 9 in the plan. *Id.* That is not to say victory is guaranteed in the district. For example, in the 2022 election, Native American preferred candidates ranged from a 3.2% loss (Agricultural Commissioner) to a 9.5% victory (Secretary of State). *Id.* at 40. But, as Section 2 requires, the proposed district provides Native American voters with an equal opportunity to elect candidates of their choice. *See* 52 U.S.C. § 10301.

Moreover, this Court has found that Demonstrative Map 2 "comport[s] with traditional redistricting principles, including compactness, contiguity, respect for political boundaries, and keeping together communities of interest." Doc. 125 at 18-19. The Court found that proposed District 9 is "reasonably compact" whether viewed on its own or "when viewed against other districts in the 2021 redistricting plan." Doc. 125 at 19. Likewise, the Court found that the district "respect[s] existing political boundaries" and "preserves and keeps together two communities of

interest." Doc. 125 at 19. Indeed, the Court heard testimony from Chairman Azure and former Chairman Yankton, whom the Court found to have "persuasively testified to all the shared interests" of residents of Turtle Mountain and Spirit Lake. Doc. 125 at 19.

Plaintiffs Demonstrative Plan 2 minimizes the disruption to surrounding districts. It requires changes to only three districts; Districts 9, 14, and 15. Ex. P001 (Collingwood Initial Report) at 38. It requires the division of only two existing voting precincts (one in Benson County and one in Pierce County), easing the burden on election officials to implement it.

The Assembly Redistricting Committee discussed Plaintiffs' Demonstrative Maps 1 and 2 at its December 20, 2023, meeting—the first and only meeting at which the committee has discussed maps during the 35-day remedial period this Court provided. Chairman Sorvaag observed regarding devising a remedial map: "You're benefiting citizens; that's fine if that's what we're directed to do, but – it could hurt legislators." N.D. Leg. Redistricting Comm. Mt'g at 10:40 (Dec. 20, 2023), https://video.ndlegis.gov/en/PowerBrowser/PowerBrowserV2/20231220/-1/31927. Near the beginning of the meeting, Representative Nathe accused the Tribes of having engaged in "bad faith" when they proposed Demonstrative Map 2 as part of the 2021 legislative redistricting process. *Id.* at 10:34. This was so, he said, because the Tribes proposed it "at the last minute" of the "compressed process"—30 days after the committee had publicly released the districting configuration this Court ruled violated Section 2. *Id.*[1] Chairman Sorvaag commented that there was "no way to go forward on [Map] 1," *id.* at 10:34, because of an incumbent-related

---

[1] Accusing the Tribes of bad faith for taking 30 days to coordinate their tribal governments, obtain a map and expert analysis, and present it to the redistricting committee during the 2021 process is deeply ironic in light of the current state of affairs. Here, on the 34th day of a 35-day remedial process, the Assembly comes to the Court contending 35 days is an unreasonable amount of time to alter a few districts, with no adopted map, no expert analysis, and no expert even retained.

4

complaint regarding Map 1.² With regard to Plaintiffs' Demonstrative Plan 2, Chairman Sorvaag observed that "I don't really have a lot of specifics to have problems" with it. *Id.* at 10:37; *id.* at 10:38 (noting that "nothing jumps out to say this absolutely doesn't make sense").

When Plaintiffs moved to modify the Court's remedial order, they suggested Map 1 because its configuration of District 9 was slightly more compact than Map 2's, although Plaintiffs noted that they also supported the imposition of Map 2. Plaintiffs' Demonstrative Map 2 was the Tribe's original proposal submitted to the redistricting committee during the 2021 redistricting process, it remedies the Section 2 violation, is reasonably configured, affects the fewest number of surrounding districts, and met with greater favor from the Assembly's redistricting committee members than Map 1 during their sole public hearing on the topic.

The Court has received expert testimony and evidence about exactly two maps: Plaintiffs' Demonstrative Maps 1 and 2. The Assembly has not adopted a map, and in the absence of an officially adopted map by the Assembly, there is no State-sponsored map to provide deference. *Williams v. City of Texarkana*, 32 F.3d 1265, 1268 (8th Cir. 1994) (holding that plans proposed by individual members of a legislative body are not owed deference; only if legislative body adopts a plan should the court defer). Plaintiffs have nevertheless listened to the redistricting committee's statements about their proposals in an effort to accommodate the Assembly and ask the Court to impose the map—Demonstrative Plan 2—with which the committee members expressed more comfort. The Secretary has requested finality to prepare for the 2024 election, the Assembly has

---

² Chairman Sorvaag questioned the motivation of Map 1, including whether it was designed to pair certain incumbents. It was not. The plan was designed to meet Plaintiffs' *Gingles* prong one burden to demonstrate a reasonably configured district in which Native Americans would be an effective majority of eligible voters. It demonstrated that an alternative, compact configuration was possible. The changes to Rolette and Ramsey Counties compared to Plan 2's District 9 were necessary to balance population given that it changed Benson County to being wholly contained in a single district.

not acted, and Plaintiffs have demonstrated with expert evidence—credited by this Court—that their proposed map remedies the violation with little disruption to the enacted plan.

## CONCLUSION

For the foregoing reasons, the Court should order Plaintiffs' Demonstrative Plan 2 as the remedial map.

December 22, 2023

/s/ Michael S. Carter
Michael S. Carter
OK Bar No. 31961
Matthew Campbell
NM Bar No. 138207, CO Bar No. 40808
mcampbell@narf.org
NATIVE AMERICAN RIGHTS FUND
250 Arapahoe Ave.
Boulder, CO 80302
Telephone: (303) 447-8760
*Counsel for Appellees*

Samantha B. Kelty
AZ Bar No. 024110, TX Bar No. 24085074
kelty@narf.org
NATIVE AMERICAN RIGHTS FUND
950 F Street NW, Ste. 1050
Washington, DC 20004
Telephone: (202) 785-4166
*Counsel for Appellees*

/s/ Timothy Q. Purdon
Timothy Q. Purdon
N.D. Bar No. 05392
TPurdon@RobinsKaplan.com
ROBINS KAPLAN, LLP
1207 West Divide Avenue, Suite 200
Bismarck, ND 58501
Telephone: (701) 255-3000
Fax: (612) 339-4181
*Counsel for Appellees Spirit Lake Nation and Turtle Mountain Band of Chippewa*

Respectfully submitted,

/s/ Mark P. Gaber
DC Bar No. 988077
mgaber@campaignlegal.org
Molly E. Danahy
DC Bar No. 1643411
mdanahy@campaignlegal.org
CAMPAIGN LEGAL CENTER
1101 14th St. NW, Ste. 400
Washington, DC 20005
Telephone: (202) 736-2200
Fax: (202) 736-2222
*Counsel for Appellees*

Bryan Sells
GA Bar No. 635562
bryan@bryansellslsaw.com
THE LAW OFFICE OF BRYAN L. SELLS, LLC
PO Box 5493
Atlanta, GA 31107-0493
Telephone: (404) 480-4212
*Counsel for Appellees*

## CERTIFICATE OF SERVICE

      I certify that the foregoing was served on all counsel of record via the Court's CM/ECF system.

*/s/ Mark P. Gaber*
Mark P. Gaber
*Counsel for Plaintiffs*